ALBANY,
Feb. 1806.

Green
v.
Hart.

William Green, *who is impleaded with* Aylmar Johnson, and others, } Apellant,

*against*

Ephraim Hart, } Respondent.

Where the complainant in his bill inquired as to the consideration of a note, but asked nothing as to usury, and the defendant in his answer alleged *usury*, the indorsement of the note by the complainant was held *prima facie* evidence of a full and adequate consideration, and the answer of the defendant not to be evidence of the usury, which ought to be proved. Where a mortgage was given to secure a note payable to order, and the holder indorsed the note over, and at the same time delivered to the indorsee the mortgage, but made no assignment of it in writing, it was held that the transfer of the note being in writing, the mere delivery of the mortgage security was a sufficient assignment. The debt is the *principal,* and the security the *incident.* The assignment of the principal draws after it the incident.

AYLMAR JOHNSON, on the 2d *September*, 1796, being justly indebted to *William Green*, in the sum of $1551 64 cts. gave him a promissory note for that sum, payable to him, or his order, at the *Bank of New-York*, on the 1st of *May*, 1798. To secure the payment of this note, *Jonas Platt*, who was a trustee of *Johnson*, executed a mortgage of two lots of land in *Corley's Manor*, which was duly registered.

In *October*, 1796, *Green* indorsed the note to the respondent, and delivered it to him, with the mortgage, which he holds. The respondent filed his bill against the appellant and others, stating the above facts, and that he paid a valuable consideration for the note and mortgage, and that by non-payment of the money, he was seised of the mortgaged premises; requiring an answer to every part of the bill, and praying that the money might be paid, or the premises sold in the usual manner.

The respondent, on the 3d, of *March*, 1798, gave a re

eeipt to *Green*, acknowledging that he received the note of *Johnson* as collateral security for the payment of *Green's* note to him for $1491 11 cts. payable the 3d of *May* 1798, and stating, that the note of *Johnson* was secured by a mortgage which was " not assigned."

*Johnson*, in his answer, insisted that the mortgage had not been assigned to *Green*, who stated, that the sum really lent to him by the *respondent*, was only $1035 ; the residue of the note being for usurious interest. There was no satisfactory evidence of the usury ; and the chancellor decreed a sale of the mortgaged premises, and an account to be taken of what was due on *Johnson's* note, and directed the proceeds to be applied to the payment of what was due, and the costs. From this decree, *Green* appealed to this court.

The reasons for the decree were assigned, by

The CHANCELLOR. Since I have had the honour of presiding in the court of chancery, I have uniformly made it my practice, on every occasion which involved the least doubt, to reduce the opinion I expressed, to writing. Hence, on every appeal from any decree pronounced by me, in that court, I have, in assigning my reasons for it, strictly confined myself to the precise terms in which my opinion was conceived at the time of delivering it.

I regret, that either an impression that the decretal order appealed from in this case, was consonant to the established principles of the court, or my having parted with, or mislaid the paper containing my reasoning on the subject, will prevent me from following my usual course.

As the circumstances attending the argument have left very indistinct traces of it in my mind, and as I have not even a note respecting the manner in which I disposed of the points presented for my determination, I must necessarily substitute my present view of the subject, for that on which the decree appealed from was founded.

It cannot be of much use to travel farther into the

ALBANY,
F. b. 1806.

Green
v.
Hart.

cause, than the points on which the *appellant* relies for the reversal of the decretal order ; and as the solicitude which a sense of duty cannot fail to excite, is now devolved upon this court solely, the reasons which occur to me in support of the order, will be stated with the utmost brevity.

The disparity between the amount of the sum, to secure which the note was transferred, and the sum due on it, is a proper subject for the examination and adjustment of the master ; upon the coming in of whose report, it would have been competent for either party to apply for a modification of the judicial decree so as to consist with the rights of the several parties in interest.

The usury is disclosed in the appellant's answer. The existence of the mortgage and the note is admitted. The allegation of usury is merely in avoidance, in its present complexion ; for though in answer to the complainant's allegation of a pre-existing *bona fide* debt, it might have effect, if the evidence of the existence of the debt depended upon parol only ; yet, I think, it is not of itself, and unsupported by other proof, available to defeat a deliberate promise *in writing*, acknowledging a receipt of the value, and engaging to pay in consequence of it.

The inceptive steps of strictly fair and legal loans, are not unfrequently, from the nature of the transaction, secret and confidential, and the knowledge of them confined to the parties interested ; and if the simple averment of the borrower, though verified by his oath, possessing the force attached to it as an extorted disclosure from a deponent, can be admitted to destroy the effect of securities deliberately formed, and clothed with the necessary legal formalities, the suppression of the exaction of usurious interest by those means, must unavoidably tend to promote the greater evils of fraud and perjury.

The circumstances to be collected from the testimony, have no necessary connection with the transfer ; nor does it appear to me, that they are so corroborated by the appellant's answer, as to render it doubtful which ought to pre-

ponderate. If that were not the case, it could not be a proper subject for an issue.

As to the second point, whether the respondent acquired any right to the mortgage in question, by the transfer of the note?

The note given to the appellant by *Aylmar Johnson*, was coeval, and part of the same transaction, with the mortgage in question, and the only reason why the agency of *Jonas Platt* was at all connected with it, appeared to have been, because, he held the mortgaged lands, which were intended as collateral security for the payment of the debt due from *Johnson*, as *his trustee*. *Johnson*, therefore, in every equitable point of view, was both the maker of the note and mortgagor, as the mortgage was executed by his direction or procurement, by his trustee, who has disclaimed all other interest than such as he holds as trustee, and respecting whose interest the parties do not differ.

The indorsement of the note by the appellant to the respondent, was accompanied by the delivery of the mortgage. If the note was satisfied, it involved the satisfaction of the mortgage, for the *existence* of the mortgage, by express reference, depended upon that of the note. In its essence, and by act and operation of law, it was parcel of the same contract, executed at the same time, directed to the same object, and to be satisfied by the same means.

The doctrine laid down by Lord *Mansfield* in the case of *Martin* ex dem. *Weston* v. *Mowlin*,* which was cited in argument, before me, applies to this point with much force.

The question in that case arose on a bill, between the representatives of the real, and the representatives of the personal estate of the testator.

In defining the species of property of a mortgagor, Lord *Mansfield* observes : " A mortgage is a charge upon the land, and whatever will give the *money* will carry the estate in the land *along with it*, to every purpose. The estate in the land *is the same* thing as the money due upon it. It will be liable to debts ; it will go to executors ; it will pass by a

ALBANY,
Feb. 1806.

Green
v.
Hart.

* 2 *Burr.* 969.

will not made and executed with the solemnities required by the statute of frauds. *The assignment of the debt*, or forgiving it, will draw the land after it, as a consequence ; nay, it would do it, though the debt were only forgiven by parol ; for the right of the land would follow, notwithstanding the statute of frauds."

The receipt of *Ephraim Hart*, designates the mortgage as delivered, but *not assigned*. This, it appears to me, was merely descriptive of its situation, at the time of its delivery. It had no formal assignment ; but if it was intended not to be assigned, its delivery to the respondent is inexplicable, unless the slight ligament connecting the note with the mortgage, is the reason, as alleged by the appellant. But that circumstance would appear to intimate, that the parties intended they should remain inseparable.

I think, however, that the transfer of the note, and the delivery of the mortgage, are decisive on this point, and that the respondent took the latter as a legal incident of the transfer of the debt.

*Pendleton*, for the appellant. 1. The respondent did not, in his bill, allege a debt due to him, from the appellant, though the note of *Johnson* was admitted to be a mere collateral security. The respondent charged, that he paid a full consideration for the note. This is denied by the appellant ; the debt, therefore, for which the security was given, ought to have been proved. Now, there is no proof of the original debt, nor even of the existence of the note from *Green* to *Hart*, unless the chancellor considered the receipt given by the latter, as evidence of an existing debt. Admitting, for a moment, that the delivery of the mortgage was equivalent to an assignment of it, the decree should have directed an account to be taken of what was due on *Green's* note to *Hart*, and the mortgaged premises to be applied to that. Where the mortgagor denies the amount, alleged to be due, the court will always direct an inquiry to ascertain the real sum.* The answer put the fact of consideration alleged at issue, and it ought to have been inquired into. If the mere production of papers, be considered as conclusive evidence of the

amount due, it would be unjust in principle, and perni-
cious in practice ; for there may have been payments
made which do not appear on the papers. Again, the
decree is erroneous as it orders the whole sum to be paid,
when it is admitted that 60 or 70 dollars, at least, are due
to *Green.*

2. Wherever the fact of usury is brought before the
court, equity will lay hold of it, and relieve, by inquiring
into the amount of principal and interest really due, and
decreeing the security to stand for that amount.†

By the statute of this state against usury,‡ all securities
for the payment of usurious loans are declared void, and
the party may recover back what he has paid beyond the
legal interest. It would be useless and absurd to decree
the payment of an usurious sum, when the party might
immediately bring his action to recover it back.§ A
court of equity ought to prevent a multiplicity of suits. It
would have been more equitable, therefore, to have refer-
red the whole matter to the master to have ascertained
what was really due, exclusive of the usurious interest.
Why allow a circuity of action when the whole matter may
be fully settled in one suit?

3. But, admitting the original debt to have existed, was the
mortgage *so assigned* to *Hart*, as to give him a *lien* on the
mortgaged premises for that debt? The act for the pre-
vention of frauds,* declares " that no leases, estates, or
interests, whether of freehold or term of years, or any
uncertain interest, of, in, to, or out of any messuages,
manors, lands, tenements or hereditaments, shall be *as-
signed*, granted, or surrendered, unless it be by deed, or
note in writing, signed by the party assigning," &c.

It is true, that some late decisions in the English courts,
have, in a great measure, rendered this provision, which is
taken from the English statute, almost nugatory. They
have determined that where the debtor delivers to the cre-
ditor the *title-deeds* of a real estate, with the intent that
the lands shall be a pledge or security for the debt, it

Vol. I.                              4 G

ALBANY,
Feb 1806.

Green
v.
Hart.

† *Henckle* v.
*Roy. Exchange
Assurance Com.*
1 *Vesey*, 319,
320. *Scott* v.
*Nesbitt.* 2
*Brown, C. C.*
649.
‡ *Laws of N.Y.*
57. sec. 1 and 2.
§ *Moore* v. *Bat-
tie, Ambler,*
371.

* *Laws of N.Y.*
*vol.* 1, *p.* 75,
*sec.* 10.

ALBANY,
Feb. 1806.

Green
v.
Hart.

\* 4 Vesey, jun.
24. Moore v.
Edwards 2
Brown. C. C.
567. Whit-
church v. Bevis.
† Burrows, 979.

‡ 2 Vesey, jun.
378, Jones v.
Smith.

shall be considered as an equitable mortgage, without any assignment or written agreement for that purpose.\* And it may be said that it has been decided, that by an assignment of the debt, its securities also are transferred. It is true, there is a *dictum* of Lord *Mansfield's* to that effect,† but it is against the spirit and intent of the statute of frauds.

A mortgage is an *interest* in lands, and is assignable as such. A mortgagee may bring ejectment. His interest, however, cannot be assigned without writing. If the debt and security be distinct, the assignment of the one is not a transfer of the other. The receipt given by the *respondent* expressly negatives the idea of the mortgage being assigned ; yet the chancellor decreed that the note and mortgage were *collectively* assigned. It could not be an implied assignment, for the words negative an implied, as well as an express assignment. A deposit of deeds is no more than a pawn or pledge, to remain until redeemed within a certain time. Deeds are personal chattels, and a pledge or pawn is a deposit of personal chattels, or effects.‡

*Hoffman & Harison*, for the respondent. 1. It is said that there is no debt or consideration in this case. The note imports, on the face of it, a consideration, and it remained with the appellant to show it to be bad or corrupt. From the manner in which the counsel on the other side have argued, it would seem as if *usury* had been actually proved. There was only a mere allegation of usury, which was denied by the replication, and being put at issue, it was incumbent on the *appellant* to prove it. The mere suggestion of usury is not sufficient to entitle the party to the interposition of the court of chancery. In all the cases cited, the usury was proved, and, however odious it may be in the eye of the law, it must, like every other ground of defence, be proved. It is not an offence at common law, but created by statute, and if relied on in bar, or avoidance of a demand, ought to be strictly proved.

That the appellant in his answer swears there was usury, is not proof of the fact.   He was made a party merely because the legal estate was in him.   He was not a witness.   He admits the two notes, and that they were unpaid.   He was not asked about usury ;   the information was voluntary on his part.   In the case of *Bush* v. *Livingston &* *Townsend*, adjudged in this court, at the last session, it was decided, that where the original transaction was *bona fide*, no subsequent transaction or agreement would render it usurious ;   nor was the answer of the defendant in that cause, alleging usury, considered as evidence.   Supposing, therefore, for the sake of argument, that the note from *Green* to *Hart* had been usurious, it cannot impair the note and security given to *Johnson*.   If *Green* wished for relief on that note,   he ought to have filed his bill, offering to pay what was really due, and praying to be relieved from the residue.   The respondent as assignee of the note and mortgage, may receive the whole amount.   If any be due from him to the appellant, it remains to be proved,   and the respondent will be accountable as trustee for the surplus.   The debt was fully proved, and there was no evidence of usury.   To refer, therefore, the cause to the master on that point, or to direct an issue, would create useless delay.   As to any surplus, it is in the power of the chancellor to distribute the fund between the parties according to equity.

2. The appellant complains that there was no assignment of the mortgage to the respondent.   This objection would come with more propriety from the mortgagor.   If the note be paid, the mortgage will be discharged ; but should he pay the appellant on the mortgage, he would remain liable on the note.   There can be no just motive for separating them.   The respondent has a right to elect his remedy, and has resorted to the land.   The mortgage can be of no use to any other person.   The debt is the principal ; the mortgage is the accessory. *Omne principale trahit ad se accessorium.* In the case of *Martin* ex dem. *Werton* v. *Mow-*

ALBANY,
Feb. 1806.

Green
v.
Hart.

* *Burrows*, 979.
† *Mortgages*,
4th ed. 1115.

* 2 *Anstruther*,
427. *Birch* v.
*Ellames*.

*lin*,* Lord *Mansfield* observed, that the assignment of the *debt* would draw after it the *land*, as a consequence. The *dictum* of so great a lawyer deserves consideration. But it is a principle which has been adopted and acted upon ever since, and is founded in solid reason. *Powell*† considers the debt as the *principal*, and the land as the incident, and the delivery of the mortgage-deed or security is considered as an equitable mortgage or assignment. The language of the statute of frauds is, *unless the same* be in writing, or *unless it pass by operation of law*. If the debt draws with it the security, it passes by the operation of law. A *resulting trust*, arising by operation of law, is not within the statute. Here the assignment of the debt was in writing, so that there is no danger of fraud and perjury, to prevent which, that statute was made. Courts of equity consider a deposit of the *title-deeds* of an estate, to secure a debt, without any writing, as an equitable mortgage.* Our act is similar to the English statute, and the decisions of the English courts, are applicable here. Why did *Green* deliver the mortgage, if he did not mean to transfer it as a security ? In his answer, he says, it was attached by a string to the note, and delivered by *accident*. This reason is too trifling to be seriously admitted. It was impossible that he could have so delivered it by *accident*. The string which attached the mortgage to the note, was a gordian knot, which he had neither the ability to untie, nor the heroism to cut : a court of equity will not separate them, for it would be worse than useless, it would be mischievous, to allow of different assignments of the debt and security. As to the words in the receipt, they were merely descriptive, that is, that no formal written assignment had been executed. They can have no effect, when it is shown, that no such assignment was necessary. The grounds of appeal, in this case, are, in truth, so frivolous, that the court ought to inflict exemplary costs on the appellant, to prevent the abuse of appeals, for the mere purpose of delay.

*Pendleton*, in reply. The statute of frauds, in excepting transfers by *operation of law*, relates only to *resulting trusts*,

and does not apply to direct transfers. A *parol* agreement for the assignment of a mortgage, is within the statute. The indorsement of the note, did not transfer the mortgage by operation of law. If considered as an implied trust, yet, no trust can be created without writing, except such as arises by the operation of law. The decisions of the English courts, as to the deposit of title-deeds, being since our revolution, are not authorities in this court. The cause must be here decided on principle.

Where a party alleges a fact, and calls on the defendant to answer it, the answer is evidence, though not as to any collateral matter, suggested by way of defence. Here the bill required the defendant to answer to every part, as if particularly interrogated. The defendant is asked, did you give a full and valuable consideration for the note? and he answers, that he did not, and states how much was actually paid. Here he is made a witness to that point ; for the question of *usury* is necessarily involved in the inquiry, as to the consideration. Why drive the appellant to a cross bill, when the whole matter might be investigated and settled, by an order of reference to a master, who would ascertain the balance really and *bona fide* due to the respondent? The order of reference, is the usual and invariable course of proceeding; and, even if this court should not be satisfied, as to the usury, they will reverse the decree, that the proper reference to the master may be made, and that fact be clearly ascertained.

SPENCER, J. delivered the unanimous opinion of the court. On the argument, it has been insisted by the appellant's counsel,

1st. That the respondent having, in his bill of complaint, interrogated the appellant, as to the consideration for the note and mortgage, his answer, in relation to the usury, becomes evidence in the cause, and is not disproved.

2d. That it was not *Green's* intention to transfer the mortgage to *Hart* ; and had it been so, nothing passed by the mere delivery, as the statute, to prevent frauds and perjuries, requires a deed or note in writing.

ALBANY,
Feb. 1806.

Green
v.
Hart.

3d. That the decree is erroneous, in directing the whole amount of *Johnson's* note and mortgage to be paid to *Hart*, inasmuch as it was a security to him, for $1491 11 cts. only, the difference between which and *Johnson's* note being clearly due to *Green*.

With respect to the first point, it is to be observed, that the respondent was in possession of *Johnson's* note, as indorsor ; and the fact of the absolute indorsement by *Green*, was *prima facie* evidence of a full and adequate consideration paid for the note. The respondent was under no necessity of inquiring into it ; but he did allege, that the consideration was a full and valuable one. This the appellant might have denied ; and had it been incumbent on the respondent, he must have proved his allegation, or failed in the suit. The burthen of showing, that the consideration was illegal or inadequate, rested on the appellant. When he goes into a charge of usury, he departs from the question put to him, which admitted only of an affirmative or negative answer ; and it was wholly immaterial whether it was the one or the other. I view, therefore, the appellant's answer, charging usury, as insisting on a distinct fact, by way of avoidance. The respondents having replied and given him an opportunity to prove the fact, and he having failed to do so, his answer is no evidence of the fact. This is a well established principle in chancery proceedings, and will be found recognised in every treatise on evidence, in that court.

Courts of equity consider mortgages according to the essential nature of contracts, and give them operation according to the intention of the parties : the debt is, consequently, there esteemed the principal, and the land the incident ; and whenever the debt is discharged, the interest of the mortgagee in the land ceases of course. There is, then, a manifest distinction between absolute estates in fee, and conditional estates for securing the payment of money. Mortgages are not now considered as conveyances of lands, within the statute of frauds ; and the forgiving the debt, with the delivery of the security, is holden to be an extinguishment of the

mortgage.* If, however, a mortgage was within the statute, the circumstances of this case would exempt it from its operation. In case of the payment of the money secured by mortgage, in equity, a trust arises for the benefit of the mortgagor ; so, where the debt thus secured, is transferred by the mortgagee, he becomes a trustee, for the benefit of the person having an interest in the debt.† In the case of *Martin* v. *Mowlin*, *(2 Burr.* 979.*)* Lord *Mansfield* lays it down, as an established principle, that the assignment of the debt will draw the land after it ; and I cannot agree that this was an *obiter dictum* of the judge.

ALBANY,
Feb. 1806.

Green
v.
Hart.

* *Powell,* 3d
ed. *Mort.* 54.
*Barnard,* 90.
*Richard* v.
*Sims.* 2 *Burr.*
979.
† 2 *Anstruther,*
438.

In the present case, the mortgage was delivered to the assignee of the debt. Had it not been delivered, nor any thing said about it, I should have considered the respondent, on the failure of *Johnson* to pay the note, entitled to the aid of the mortgage. It was competent to the parties to agree, that the mortgage should not be resorted to by the holder of the note ; but the proof of such agreement lies on the appellant, and it should be explicit. The receipt furnishes no evidence of such agreement ; it describes the real situation of the mortgage as not assigned. But this expression falls far short of an agreement, that it was not to be assigned. It does not appear that the appellant had any rights prejudiced by the assignment of the mortgage; and it is impossible to evade the force of the fact of his depositing it in the respondent's hands. It speaks a language incapable of being misunderstood, and is decisive of the question. An issue, to investigate the intention of the parties, on that act, would have been useless. I therefore think, that the respondent had an equitable interest in the mortgage, equivalent to the amount of the principal and interest of his note, against *Green.*

I shall be very brief on the last point, because I understand the chancellor, as saying, in assigning his reasons, that the question of distributing the fund, to be produced by the sale, is yet before him. The master's report furnishes him the necessary *data* on which to make a just distribution ; and it would be unnecessary to give directions on that subject, the respondents not claiming any thing beyond the principal

ALBANY,
Feb. 1806.

and interest of the appellant's note, and his costs, to which I think him well entitled. The decree ought to be affirmed with costs. I cannot think, however appearances may be, that the respondent, or his counsel, considered the points, now decided, as necessarily, or absolutely adjudged on the former appeal; and I am, therefore, disinclined to allow any thing beyond the taxable costs.

It was, thereupon, ORDERED, ADJUDGED and DECREED, that the decree of the court of chancery complained of, be *affirmed*, and that the appellant pay to the respondent, his costs, to be taxed, and that the record be remitted.

Judgment of affirmance.