Bkevard, J.
This motion is to set aside a nonsuit, ordered by the .District Court of Orangeburgh, on the ground of a failure of necessary evidence to maintain the action. The action was trover and conversion of a negro slave.
The plaintiff’s claim was bottomed upon an instrument of writing, containing a conditional contract of sale by the owner of the slave,-Snell, to the plaintiff, by way .of mortgage, to secure the payment of a sum of money lent by the plaintiff to Snell. By the terms of the contract, the slave was to remain in Snell’s possession until the day of .payment, when, if the money was not paid, with interest, it should be lawful for the plaintiff to take possession of, and sell the slave, in satisfaction of the debt; but if the debt was satisfied at the day, the sale should be void.
The paper writing containing the evidence of this contract, was not sealed, but only signed by Snell. It was stated that the debt was unsatisfied, after the day appointed for the payment thereof; and the plaintiff contends, that by the legal operation of the contract, the mortgagee became proprietor of the slave, liable to the equity of redemption.
*70 Upon this statement, the paper was offered in evidence, to prove property in the plaintiff, and was rejected by the District Court, in consequence of which-the nonsuit was ordered.
The general question is, whether the plaintiff had, under the circumstances of the case, such an absolute or qualified property in the slave in question, as is sufficient to maintain trover 1 Or, in other words, admitting the facts stated, whether they would amount to the proof of such a property in the slave as would entitle the plaintiff to maintain this action 1
The solution of this question depends upon the true construction of the agreement between the plaintiff and Snell, and the law. relative to mortgages and pawns.
Mortgages, in their origin, had in view an equal agragrian, as some have supposed, by preserving lands in the same tribes, or families.
Their introduction into England, was, no doubt, from the civil law. That law distinguished between fawning and hypothecation. Where a thing was pledged for money lent, and was delivered into the actual possession of the creditor, it was called a pawn. Hypoth. ecation was, when the thing'pledged remained in possession of the debtor.
In both cases, if the money was not repaid, and the property redeemed, according to the agreement of the parties, the creditor was entitled to an action, by which he might obtain a judicial authority to sell the property, or dispose óf it, as his own.
In the case of a pawn, the action was against the person of the-debtor, to foreclose him; because the pigmus was already in his possession. In the case of hypothecation, the action was tam in rent, quam in personam, and lay against whoever had possession. (Bac. Abr. Tit. Mortgage. Domat. Book 3. Powel on Mort.)
By the laws of England there were two modes by which lands were mortgaged, distinguished by the names of vadium vivum, and vadium mortuum. The first sort was where the estate was conveyed, until out of the issues and profits of the land the money borrowed was repaid.
The second sort was where an estate was granted, as a security for the re-payment of the money, on condition that the mortgagor might re enter upon performance of the condition : but on default of payment, the estate became dead to the mortgagor. (Co. Litt. 205. 2 Blac. Com. 157.)
This last kind of mortgage was distinguished into two species: 1. Mortgages of the freehold and inheritance. 2. Of terms for *71 years. To avoid the inconveniences attending mortgages of the freehold and inheritance, mortgages of terms for years were adopted, and long terms of year3,by way oí mortgage, became usual. (Co. Lilt. 205, Harqr. and But. edition in the notes.)
The last improvement seems to be the covenant of the mortga. gor for himself and his heirs, to convey the freehold and inheritance of the mortgaged estate, upon default of payment at the day.' Ibid.
According to the rigid maxims of the common law, the mortgagee, after forfeiture, became the legal proprietor of the mortgaged premises, subject, however, to be redeemed in equity.
Courts of equity viewed the transaction as a 'personal contract,. Jor the loan of money. The mortgagee was considered to have an equitable interest in, or lien on, the land mortgaged, for the payment of his debt, which a subsequent sale or mortgage could, extinguish or impair. But the debt was considered as the principal, and the land the incident; and, therefore, whenever the debt was satisfied, the interest of the mortgagee was at an end, and his lient was discharged; (1 Johns. 590.) The mortgagor was still .regarded as the actual owner, notwithstanding the legal solemnities attending the conveyance, and the mortgagee as a trustee for the mortgagor. (2 Wood. 153. 2 Fonbl. 259. Doug. 610.)
The mortgagor might redeem at any time before a foreclosure, or within twenty years after forfeiture. (Pow, on Mort. 14, 15, 149.) And he had a right to the possession, until the mortgagee got pos. session from him, or brought an ejectment. (Doug. 610.) But he was considered as tenant at will, or at sufferance. (Doug. 22, 282, 266. 3 East. 451.)
Our law is different from the English, on this subject. With us a mortgage was never a mere dead pledge; for the mortgagee always had personal security, as well as the mortgage. He was doubly secured: although he could have but one satisfaction. (Kirb. 255.) . -
In this respect it resembled a pawn ; for a pawnee of goods has always a remedy against the person of the borrower. (Salk. 523. 2 Stra. 919.) So, it seems, has a mortgage# of copy-hold lands. (3 P. Wms. 359.)
By our act of assembly of February, 1791, mortgages of lands in a legal point of view, are placed on the same footing as they are regarded in equity ; .that is, as mere securities, for the repayment of money, together with lawful interest: and the mortgagee cannot maintain any possessory action for the estate mortgaged, as he may, by the English laV, after for- *72 feiEure» . This act of assembly, however, relates only to real
Let us see how the law stands in relation to mortgages of per» sonal chattels.
At common law, strictly speaking, there was no such thing. Lord Coke, however, speaks of mortgages of moveable, as well as immoveable things. The first were considered as quasi mortuum-vadium. (Co. Litt. 205.) A personal chattel might be pledged or pawned. This constitutes a species of bailment, called vadium. The chattel must be delivered, to he kept in the possession of the creditor, until the debtor has satisfied the debt. (Jones on Bailment,. 117, 118.)
The pawnee acquires a special properly. If the pawn be worse-for using, it can only- be used at the peril of the pawnee; otherwise it may be used in a reasonable manner. (Ld. Raym. 917.) The creditor is bound to restore the pawn upon payment of the debt, or use due diligence for that purpose. (Co. Litt. 89, a.) Aftér the money is paid, for which the thing is pledged, or tendered and refused, it ceases to be a pledge. (8 Salk. 268.) if no time be appointed for the redemption of the pawn, it may be made after the death of the pawnee, but not after the death of the pawnor. (2 Litt. Prac. Reg. 328. Cro. Jac. 245. See 2 N. York Cases in Error, 203, áse. Opinion of Ch. J. Kent, and the authorities cited.) The pledger may redeem after the day fixed for payment. (5 Com. Dig. 100.)
As visible possession is the only index of personal property, delivery and possession seem to be necessary to operate a transfer. Where there is an instrument of writing to evidence the transfer, possession ought to accompany and follow it. (Cowp. 432. 2 T.R. 587. 3 Co. 80.) But a conveyance may be conditional, in which case the continuance in possession of the vender is not considered fraudulent. (Cowp. 432.) But it seems the transfer is not effected, and a right of property vested, until after the mortgagee or vendee gains possession.
I do not find this pgsitibn laid down in any book, in plain terms, but it appears to me to result from all the cases and doctrine I have met with on the subject.
It is laid down as a principle decided in equity, that a ship at sea may be mortgaged ; and if the mortgagor takes all methods to get possession, such as a bill of sale, &c., it will be out of the stat. ■ Ja. 1. 2 Ves. 272.
The bill of sale, I suppose, was considered as equivalent to ac. *73 iual delivery, being such a delivery as the subject matter admitted of; as the delivery of the grand bill of sale, which is usual in the sale of a ship. (2. T< R. 462. Abbott on Shipping.)
In such mortgages oí a ship, there is a proviso, that the mortgagor shall continue in possession until failure of payment. This sort of mortgage seems to have arisen out of a spirit of commerce, and forms an exception to the general rule. By the mercantile law, a ship may be hypothecated in foreign parts, by the master, as a security for a debt contracted on account of the ship. (Abbot, 112.) These bottomry contracts, however, do not transfer the property, but only give the creditor a privilege or claim upon it, to be car ried into effect by a legal procedure in rem. (Abbott, 117, 120.) No property vests in the mortgagee until after he obtains possession by some lawful means. Indeed, it was formerly held in equity,that if the mortgagee permits the mortgagor to keep possession,- and have the disposal of the thing mortgaged, it is, as to creditors, fraudulent and void, as it gives the mortgagor a false credit. (2 Wils. 260. Ryall v. Role.) And, in the same case, it was said,that a mortgagee of goods moveable, and choses in action, is the true owner of them, and that they ought to be delivered to him as much as they may. But this doctrine was controverted in a subsequent case, in which it was held that the mortgage of a ship is good without delivery, but the mortgagor is not owner, until he has possession, for that is the essence of the contract. (1 H. Blacks. 114.) The contract in such case is valid, if free from actual fraud,although the mortgagor retains possession, if the terms of the contract require it. This agrees with the law in relation to mortgages of lands, except that in the case of lands, the mortgagee, according to the English law, may lawfully bring an action of ejectment against the mortgagor in possession, to recover the possession from him without ever having had actual possession himself.
It appears to me no action of trover or detinue can be maintained by the mortgagee of a chattel, until he has had actual possession, or, at any rate, a constructive possession in law. The law may,notwithstanding any seeming diversity, be considered as uniform in its operation, if we advert to the fiction, or rather string of fictions^ by which the action of ejectment is maintained ; and that the plaintiff is supposed, in all cases, to have had possession, and to have been unlawfully ejected. Lease, entry, and ouster, cannot be disputed' by the defendant, who must defend himself on his right or title to the possession.
The practice of mortgaging or pawing slaves, in this country, is *74 probably as ancient as the introduction of slavery into it. An act of assembly of 1698, “ to prevent deceit, by double mortgages,” &c., speaks of mortgages of negroes, and other goods, as in common use at that time. This act does not seem to require the registry of mortgage deeds as necessary to their validity ; but gives a prefe* rence to the first recorded deed, where there are two mortgages of the same property.
The limitation act of 1712, sections 14 anc( 15, limits the time for the equity of redemption, where negroes and other chattels have been sold, and actually delivered, by way of mortgage. Where there has not been an actual delivery, the time for the equity of redemption is not limited; and the mortgagee must bring a bill to foreclose. And this seems to me necessary to be done, in order to obtain possession, unless the possession can be acquired by the consent of the mortgagor, or by some other means, without a breach of the peace. The mortgagor, however, has a remedy on the contract, and the personal security of the mortgagee, independent of his relief in equity ; and he may pursue all his remedies at the same time. As to what shall constitute a mortgage, no particular words or form of conveyance are necessary. (Co. Litt. 205, a. note. Harqr. and But. edition.) To maintain an action of trover, the plaintiff must prove an absolute or special property in the thing, which is the subject of the action.
The mortgagee of any property has but a special or qualified property, unless there has been a foreclosure in equity, or the equity of redemption has been barred by limitation of time. Before forfeiture, and whilst it remains uncertain, whether the mortgagor will perform the condition at the time limited, oiq not, the legal estate is clearly in the mortgagor. (Bac. Abr. Tit. Mortgage.) There must be a right of possession, as well as of property, to maintain trover. (7 T. R. 9.)
He who has the absolute or general property, may support this action, although he has never had the actual possession; for it is a rule of law, that the property of personal chattels, draws to it the possession. (Latch. 214. Bull. N. P. 33, 35. 7 T. R. 12.) But he who has only a special property, it seems to follow, must have had actual possession.
Possession alone, will be sufficient against a wrongdoer. (1 Salk. 290. Cro. Eliz. 819. 1 Str. 505.) He who has only a special property may support the action against a stranger who takes the chattel in question, out of his possession. (Bull. N. P. 33.) But. *75 he cannot maintain the action against him who has the general property. (1. T. R. 651.)
In the present case we are not to know how the defendant claimed. He might have had the general property, or he might have been a stranger. The evidence did not come out; and, therefore, we ought to presume in favor of the plaintiff, every thing we legally may. We ought to regard the defendant as a stranger. But we cannot presume that he took the slave out of the possession of the plaintiff; because that point seems to have been conceded that he did not, and that there was not a tortious taking.
It is a dictum, of Eyre, C. J., (1 Bos. and Pul. 44,) that a person who has only a special property, may, in some cases, maintain trover, although he has never had possession ; and he instances the case of a factor, to whom goods have been consigned, and who has never received them.
With submission to so respectable a name, I must be permitted to say, that I do not admit the position in its full unqualified extent, aud I am far from being satisfied that the instance given goes to establish it. If the action can be maintained by a factor, or consignee, under the circumstances stated, it must be against a stranger, and wrongdoer, and not a subsequent purchaser, bona fide. In that case, the goods may be considered as delivered to the consignee, when they are delivered on board the ship, or other conveyance, by which it is sent, to the factor; and the goods accompany and follow the consignment. The person having charge of goods thus consigned, may well be considered the agent or servant of the consignee, as well as of the consignor. So that there is, in such case, a constructive delivery, if not an actual delivery, sufficient to vest a qualified or special property, a right of possession, in the factor. No other instance is given, or referred to, and I am not aware of any other, by which the position is supported. If, after consignment, the consignor shall re-possess himself of the goods consigned, and sell them to another person, or keep them himself, the action certainly would not lie. It is presumed Lord Eyre meant to say, that the action might be maintained by one having the special property, although he never had actual possession himself, against a stranger, or wrongdoer. This is admitted. But in the present case I cannot see any ground upon which we can admit a constructive possession. After forfeiture, when, and not be. fore, the plaintiff’s interest in the slave attached, there was no delivery of any sort, nor any act done, which can be considered as equivalent. It is understood the mortgagor afterwards sold the slave *76 *° defendant. The prior equitable lien could not be defeated, or impaired, by any subsequent sale, however fair it might be. But the question is not, whether the mortgage continued valid, and sufficient, notwithstanding the sale, but whether trover can be maintained by the mortgagee, who never had possession, against the vendee in possession, or any other person in possession, who has obtained a peaceable possession from the general owner, or any other. I can find no case in any English authority, bearing on this point directly.
In the case of Clayton v. Kill, in the Court of Appeals in Virginia, (1 Washington, 177,) it was decided that a mortgage of slaves was not void by reason of the mortgagor’s retaining posses, sion of them after the mortgage, as a statute law of Virginia requires all mortgages to be registered in a public office, which had been complied with. This decision was recognized by the Supreme Court of the United States as correct.
This agrees with the English decision before noticed. (1 H. Bl. Rep. 114.) In the case of the United States v. Hood, (3 Cranch, 89,) the Chief Justice observes, that the possession of mortgaged property always remains with the grantor until the creditor becomes entitled to the possession of it by the terms of the contract; and that such possession of the grantor is not fraudulent. The question, however, still remains unanswered, in what manner is the creditor to obtain possession 1 As to mortgages of land, the mode in England is by an action of ejectment. Our act of assembly takes away this remedy. As to mortgages of goods, I presume the mode by which possession is obtained are those I have already suggested. Where there has been an hypothecation, properly so called, the proceedings must be against the ship itself, according to the law which governs in Courts of Admiralty jurisdiction.
In the case of Barrow v. Paxton, (5 Johns. N. Y. T. R. 258,) the action was trover, as in this case, and the plaintiff claimed as mortgagee of certain chattels. The mortgagor had delivered one article in the name of the rest, at the time of the mortgage ; but the agreement was, that the mortgagor should retain possession. The mortgagor afterwards disposed of part of the mortgaged property to the defendant, who held by a bill of sale from him. The action was held to lie : and the court said “ a mortgage may be good without a delivery.” In the mortgage deed, it seems, there was a proviso, that upon performance of the condition the assignment of the mortgagor should be void. There was a delivery of a spoon, in the name of the whole mortgaged chattels : but I cannot *77 understand how a formal deliver}', before the condition was broken, ■could be held to relate to the time when the interest vested in the mortgagee, viz., at the time of forfeiture. Could the delivery have a prospective operation ; or could the forfeiture relate back to the time of delivery ? I confess my inability to reconcile this decision with the authorities and cases already considered, or taken notice of, and the principles which appear to have governed them. Therefore, although 1 entertain the greatest respect for the court by which the decision was made, I. cannot yield my assent to it, at least so far as to take it for the rule by which the present is to bo determined. And I can see no necessity for doing so, as the plaintiff, although he should not be entitled to this action, is not destitute of an adequate remedy. He is not in a worse situation than a legatee, who cannot sue at law for a legacy, although he be clearly entitled to it, upon the plainest principles of justice. And many other cases besides might be mentioned, in which the hardship would be at least equal to any which the present case involves.
Upon the whole, my opinion is, that the motion ought not to prevail.
Nott, J.
This was an action of trover, to recover a negro slave, tried before Judge Smith, at Orangeburgh. The plaintiff had taken a mortgage of the negro in question, from one Snell, redeemable upon the payment of a certain sum of money, on a future day. Snell continued in the possession of the negro, and previous to the day of payment, sold him to the defendant.
The presiding judge granted a nonsuit, on the ground that the mortgage did not vest such a legal right in the plaintiff as entitled him to maintain this action. I am, however, of opinion that such a right did vest in him, and, therefore, the nonsuit ought to be set aside. Every mortgage, prima facie, conveys a legal right to become void, on a condition subsequent, which it is incumbent on the mortgagor to prove. Whether the want of delivery, or any circumstances attending the transaction, afforded such presumption, or evidence of fraud, as would prevent the plaintiff from recovering on the merits, should have been submitted to the jury, but could not have been taken advantage of by way of nonsuit. The motion, there, fore, ought to be granted.
Coicook, J.
On the aigument of this case, I was inclined to think that the opinion of the court below was correct, and that the mortgage should not have^been given in evidence. But, on further *78 consideration, I am induced to think a mortgagee may maintain his action of trover against a third person. In England, the mortgagee may maintain his action even against the mortgagor ; Douglas, 22 ; Kuch v. Hall, 1 T. R. 382, 3; Birch v. Wright; and after the stat. 4th of Ann, which does away the necessity of attornment, he may maintain his action, or distrain for rent, against a tenant. Douglas, 279. Moss v. Gallimore. But by our act of assembly, the right of the mortgagee to maintain ejectment against the mortgagor is taken away. 1 vol. p. 65. It appears to me, if this remedy is not given, that the mortgages of personal property would be wholly ineffectual. In the case of Atkinson v. Maling and others, 2 T. R. 462, the ship, which was recovered by the plaintiff, was at sea when mortgaged, and, of course, no delivery could be made. It seems to be conceded, that the mortgagee is considered as being in possession, from the execution and delivery of the mortgage, in the same manner that the assigns of a bankrupt are considered to be in possession of the goods of the bankrupt assignee, and may maintain trover for the recovery of them. 7 T. R. 312. The mortgagee is the absolute and true owner. 3 Cranch, p. 140, 4, and 1 Vez. Ryall v. Rowles.
I am, upon these authorities, and for these reasons, of opinion that the motion be granted.
Bay, J.
Upon the argument of this case, I was rather inclined to think that the right of property was hot absolute in the mortgagee, until after a foreclosure, or a sale under the mortgage, which, in this country, has been considered as tantamount to a foreclosure. But upon reconsidering this case, I am now very clearly of opinion that upon failure of payment of the money, or performance of the condition in the mortgage, the property becomes absolute in the mortgagee. Before the failure of payment of the money mentioned in the proviso, the legal estate is still in the mortgagor, and only a conditional one in the mortgagee. But after failure of payment of the money, it is no longer conditional in the mortgagee, but absolute ; and it is gone in law from the mortgagor forever, subject, however, in equity, at any time before foreclosure, to the right of redemption, upon payment of principal and interest of the mortgage money. 2 Bl. C. 158. 3 Bac. Tit. Mortg. 635. Taking it then for granted, that the property is absolute in the mortgagee after failure, it follows, as a natural consequence, that he may pursue his property wheresoever he can find it; for the right of property gives the right of remedy, and he may take it out of the possession *79 of the mortgagor himself, or out of the possession of any other person who may have it by transfer or sale, if he can procure such possession peaceably ; or, upon demand and refusal, may maintain an action of trover for it; for he who has the first mortgage shall prevail over all other mortgages or conveyances whatever. Equ. Cabr. 320. 3 Bac. 642.
The civil law is very full upon this right of the creditor, to pursue the thing mortgaged in the hands of any person in whose possession it may be found ; 1 Domat. 343, &c. &c.; and the common law, in this respect, is borrowed from the civil law.
It has been the custom, from time immemorial, in this country, for the mortgagee, after failure of payment of the money mentioned in the proviso, to seize the negroes, or other chattels, and, after duly advertising, to sell them towards payment and satisfaction of the debt. And, indeed, this custom seems to have given rise to the common covenant in almost every mortgage deed, to empower the mortgagee to seize and sell, and to return the overplus, if any, to the mortgagor, which, in fact, is only a declaration of the common law right which would exist without it. And, although it is usual and common to put such mortgages into the hands of the sheriff to seize and sell, yet he only acts as the agent of the mortgagees, and not in his official capacity of sheriff. This custom, however, is a very commendable one, as the sheriff of a district is always supposed to be highly trustworthy, and a very proper person to conduct such sales.
Upon the whole, I am of opinion that the nonsuit should be set aside, and a new trial granted.
Grimee, J„ concurred with Bay, J.