WILLIAM DORSHEIMER, Respondent, *v.* ASHER P. NICHOLS, as Administrator of the goods and chattels of Aaron D. Patchin, deceased, impleaded with Isabella Patchin, Appellant.

The *decision* in this case would seem to be confined to a question of the admission by the court below of certain evidence.

The plaintiff was assignee of certain indebtedness of A. D. Patchin to the C. C. Bank. The collaterals to secure that indebtedness had been sold by the bank, or its trustees, to one Tifft. At the time of the sale, the debtor Patchin was a lunatic. Mrs. Patchin was subsequently appointed a committee of his person and estate. In that capacity she commenced a suit against Tifft, the trustees of the bank and the plaintiff (assignee), to set aside the sale made to Tifft, of the securities held by the bank as collateral.

A compromise was effected with the consent of the court, by which Tifft agreed to surrender a portion of the securities, or pay a corresponding amount in money. Mrs. Patchin elected to take the money instead of the securities.

Upon an action by the plaintiff, against the administrator of Patchin and Mrs. Patchin, to enforce his lien, as assignee of the indebtedness of Patchin, upon the avails of, or the substitute for the collaterals for that indebtedness, received by Mrs. P. upon the settlement with Tifft, evidence was admitted to prove that at the time of such settlement, the plaintiff had an express understanding with Mrs. P. that he should retain his legal claim on the securities which were the subject-matter of the action, to the extent to which the same should come into her hands upon such settlement or upon the proceeds, if she should elect to take money instead of the securities.

*Held*, that no error was committed by the admission of such evidence.

The doctrine that title to collaterals taken as security for a debt passes without delivery, to the purchaser upon the sale of the debt. (See opinion of POTTER, J.) not affirmed by the court.

THIS is an action to enforce an equitable lien on a certain $30,000 received by the defendant, Isabella Patchin, as committee of the person and estate of Aaron D. Patchin, a lunatic, from George W. Tifft, on the settlement of a suit brought by her, as such committee, against the said George W. Tifft, Willam Dorsheimer (the plaintiff in this action),

and Samuel Barrett, Abner Hazeltine and others, as trustees of the president, directors and company of the Chautauque County Bank.

Such action was brought in the Superior Court of Buffalo on or about May 29, 1863, to set aside the sale of certain railroad stock by said trustees to Tifft, and for an accounting. Process was served on Tifft only, who answered.

The complaint therein contained allegations substantially as follows:

That on the 29th day of September, 1859, Aaron D. Patchin, since deceased, was indebted to the president, directors and company of the Chautauque County Bank in the sum of $70,000, which indebtedness consisted of the promissory note of the said Patchin, and of certain bonds and mortgages made and executed, or guaranteed, by the said Patchin, and that, as collateral security for the payment of such indebtedness, the said Aaron D. Patchin, on the said 29th day of September, 1859, and subsequently, transferred and delivered to the said the president, directors and company of the Chautauque County Bank a large amount of the capital stock and bonds of the Buffalo, New York and Erie Railroad company and other securities.

That on the 1st day of January, 1860, the charter of said bank expired, and Abner Hazeltine and others were duly appointed trustees, pursuant to law, to receive its assets and close up its affairs, who received the evidences of the said indebtedness of said Patchin, and the various securities delivered by him to said bank as collateral thereto.

That thereafter, and prior to July 1, 1862, the said trustees had received divers sums of money on said securities to apply on said indebtedness, and had redelivered to said Patchin portions of said securities received from him as collateral to such indebtedness, and that, on said 1st day of July, 1862, the securities remaining in the hands of said trustees, as collateral to the unpaid portion of said indebtedness, consisted of fourteen hundred and sixteen and one-half shares of the capital stock of said railroad company, of the nominal value of $100 each.

That on the 27th day of February, 1862, and the 19th day · of March, 1862, the said trustees assigned and delivered to · the plaintiff a portion of the said indebtedness of said Patchin, and to which said securities were collateral (amounting, at the time of the trial of this action, to $48,568.44).

That on the 16th day of July, 1862, the said trustees sold and transferred to one George W. Tifft, for the price and sum of $4,000, the said fourteen hundred and sixteen and · one-half shares of said railroad stock, at which last mentioned time the said Aaron D. Patchin was of unsound mind ; and that, on the 20th of December, 1862, the said Isabella Patchin was duly appointed a committee of the person and estate of said Aaron D. Patchin, and entered upon her duties as such committee.

In May, 1863, Mrs. Patchin, as committee of the estate of Mr. Patchin, commenced an action in the Superior Court of Buffalo against Mr. Tifft, the trustees of the Chautauque County Bank, and Mr. Dorsheimer, the plaintiff in this action, to set aside the sale of the railway stock made to Mr. Tifft, on the ground that such sale was unauthorized and void.

By an order of the Superior Court of Buffalo, granted on the 20th of June, 1863, Mrs. Patchin was authorized to settle the controversy relative to the sale of the stock to Mr. Tifft, by ratifying the sale made to him by the trustees on his transferring to her $30,000 of the railway stock, or on his paying to her, in lieu of such stock, $10,000 in money, and securing to be paid, in addition thereto, $20,000. Mrs. Patchin elected to receive the money and the securities for the $30,000, in lieu of the stock. But, before the sale of the stock could be ratified by Mrs. Patchin, it was necessary to procure the plaintiff's assent to it, as he had a lien on a proportionate share of the stock as security for that portion of Mr. Patchin's indebtedness which had been assigned to him. The plaintiff executed a release, so far as the trustees and Mr. Tifft were concerned, expressly reserving to himself his lien upon the $30,000 of stock Mrs. Patchin was to receive from Mr. Tifft; and, in case she elected to take money and other securities from Mr. Tifft, in lieu of and as and for the

stock, then such lien was to follow such money and securities as the proceeds of the stock.

Mrs. Patchin elected to take money in place of the stock. The action against Mr. Tifft and others was discontinued by her. Mr. Tifft paid to her ten thousand dollars in money, and secured the payment to her of twenty thousand dollars in addition, by delivering to her his four promissory notes, payable to her order as committee, of five thousand dollars each, with interest, in six, twelve, eighteen and twenty-four months.

The money and securities received by Mrs. Patchin on the settlement were kept separate and distinct from other funds, with the exception of one thousand dollars, which were expended by her. She produced in court, on the trial of this action, the securities in which the moneys paid to her had been invested and the unpaid notes given by Mr. Tifft.

The mortgages accompanying the bonds assigned to the plaintiff were subject to the lien and operation of prior incumbrances, and their lien on the premises embraced in them had been extinguished by the foreclosure of the prior incumbrances. Mr. Patchin died insolvent.

The court decided that the assignment by the trustees of the Chautauque County Bank to the plaintiff of a portion of their debt against Mr. Patchin conferred upon him the right to a proportionate share of the securities held by the trustees as collateral to the entire debt; that the sale by the trustees to Mr. Tifft did not divest the plaintiff's lien upon such proportionate share of the collateral securities, and that the ratification of the sale made to Mr. Tifft, in consideration of a surrender of a portion of such securities, in consideration of the payment of ten thousand dollars, and the giving of other securities in lieu of the stock, did not defeat the lien of the plaintiff, and that he could enforce such lien against the proceeds taken by Mrs. Patchin in lieu of the collaterals so far as such proceeds could be traced.

The court directed a judgment in favor of the plaintiff establishing a lien upon the said proceeds, and directed the transfer of the said securities and proceeds to the defendant,

Asher P. Nichols, as administrator, and a sale of the securities by him, and the application of the proceeds and of the money on hand after the payment of costs, commissions and expenses, to the debt of the plaintiff. The judgment was entered accordingly.

The defendant, Mrs. Patchin, complied with the direction of the judgment by transferring to Mr. Nichols all of the securities and money in her hands, upon which the lien was established. Mr. Nichols alone appealed from the judgment of the Special Term to the General Term. The General Term affirmed the judgment, and Mr. Nichols appeals from the judgment of affirmance to this court.

*A. P. Nichols*, for the appellant.

*John Ganson*, for the respondents.

POTTER, J. There was no exception taken to the finding of facts or to the conclusion of law thereon, as found by the judge on the trial. The only error complained of by exception, is, to the admission of evidence by the judge on the trial, " that at the time the release was given by plaintiff to the trustees of the Chautauque County Bank and others, of his (plaintiff's) claim to stock sold by said trustees upon which plaintiff claimed to have a lien, " it was the express understanding between him and Mrs. Patchin, as committee of her husband's estate, that the plaintiff should and might retain whatever legal claim he had on the stock which was the subject-matter of such action, to the extent which it would come to her hands by the settlement authorized by the order of the court in her behalf, in case she should elect to take stock, or the proceeds of it in case she should elect to take money in lieu of stock."

To understand the nature and point of this exception, it must be borne in mind that the plaintiff was at that time the assignee of a portion of the debt of the Chautauque County Bank, which held this railroad stock as their collateral security; that in law, the assignment of the principal debt carried with it the accessory collaterals, and, if part of the principal

debt was assigned, the assignee was entitled to a *pro rata* interest in the collaterals as incident, whether mentioned in the assignment or not.   The cases of *Jackson* v. *Blodgett* (5 Cow., 202); *Green* v. *Hart* (1 Johns., 590); *Martin* v. *Moulin* (2 Burr., 978); *Pattison* v. *Hull* (9 Cow., 747); *Curtis* v. *Tyler* (9 Paige, 432); *Parmelee* v. *Dann* (23 Barb., 461), are cited to this point.   I think the authorities cited sustain the proposition.   If they do not, as there is no exception to reach the error, we cannot reverse it here.

The sale of these collaterals by the trustees of the Chautauque County Bank to Tifft, did not destroy the lien of the plaintiff thereto or therein.   And such sale thereof, made at the time that A. D. Patchin (who had the equity of redemption therein) was of unsound mind, was void as against Patchin.   The action therefore of Mrs. Patchin, as committee of her husband, to set aside this sale, was, of course, in its effect, to do so to the extent of her interest therein ; which was an equity of redemption in said stocks, subject to a lien of the plaintiff on such stocks.   This was all the relief which the court could have granted her in an action in which the plaintiff was a party.   Mrs. Patchin was then the proper representative, and the legal owner of the title to such stocks subject to plaintiff's lien, and her acts in relation thereto were binding on the estate, and notice to her, in a matter affecting such estate, was notice with all its consequences to the true owner of the estate.   Had judgment been rendered in her favor in her action, she would have recovered the stocks so sold, but such recovery would not in law have released the stocks from the lien of the pledge made of them by her husband, and which followed the debt as it was held, into the plaintiff's hands.   While this action was so pending, Tifft, the assignee from the said trustees, proposed a compromise of the action by giving to her $30,000 of said stocks, if she would ratify the sale of the whole, which such trustees had made absolute to him, or give her $30,000, the par value thereof.   The trustees being parties to the action, united in the offer of compromise.   All of the parties knew of the plaintiff's interest therein.   Mrs. Patchin applied to the court

for permission to compromise, and it was granted. The said trustees and Tifft applied to the plaintiff to release his lien upon the said stock. The plaintiff did release with the reservation to himself of any and every lien, claim or preference which he might or could have by reason of the said sale to him of the said indebtedn ss and securities upon, in or to any and every sum of money, property or fund which had or might thereafter come into the hands, possession or custody of Isabella Patchin, committee, etc., of her husband.

It might perhaps be presumed that Mrs. Patchin knew of the terms of this release. It would be sufficient if she knew that her receipt of $30,000 of this stock in lieu of the whole, or the same amount in money, was to be on condition, or to be subject to the same lien to the plaintiff as the whole amount would be if she had recovered the whole. The whole stock, and every part of it, was subject to the plaintiff's lien until he released it. As to her, or to the estate she owned as committee, he did not release; but, on the contrary, expressly reserved his lien. Her knowledge, then, of the terms and conditions upon which this stock was received by her, was an important feature in the evidence. This knowledge could be proved in any legal manner. It was not necessary it should be a part of the record, or be a written acknowledgment, or be by a written notice. If she knew that the stock or its proceeds, upon which the plaintiff had a legal lien, was not released, she knew that as to him it existed as a lien, and could be followed into whose hands soever it might fall.

In this view I can see no error committed by the judge in permitting it to be proved, "that it was the express understanding between the plaintiff and Mrs. Patchin as such committee that the plaintiff should retain whatever legal claim he had on the stock which was the subject-matter of such action, to the extent to which it should come into her hands by the said settlement authorized by said order in case she should elect to take stock, or to the proceeds of it in case she should elect to take money in lieu of stock."

As between plaintiff and Mrs. Patchin, if the settlement had been made without any understanding between them, he

could, by virtue of the lien he held on the stock, have followed it or the proceeds into her hands. She represented the estate of her husband, he had pledged this stock to secure a debt he owed, the plaintiff was the owner of that debt and of that pledge for that purpose. The first pledgee had, without authority, undertaken to dispose of the property pledged. Mrs. Patchin, as the legal representative of the pledgor, claimed that such disposition was void, and commenced her action to avoid such sale. Terms of compromise were offered between the pledgee and their assignee and Mrs. Patchin. The terms were accepted, the arrangement made and perfected. By all this the plaintiff's rights were not affected. He relinquished nothing of his rights. The clearest equity protects his interest. It is not even necessary, I think, that Mrs. Patchin should have had knowledge of his rights. At all events, that she did have, and that evidence was given that she expressly agreed to recognize them, is no error against her or the estate she represented.

I think the judgment is right, and should be affirmed.

The court concurred in this conclusion, though a majority did not commit themselves to the proposition that the collaterals taken as security for a debt passed with the debt on a sale of the principal debt.