## DORSHEIMER *v.* NICHOLS.

### September, 1865.

Where a compromise was made between A., B. and C., parties to an action, by which A. agreed to release his right to certain securities, as against B., but reserved his claims against all other persons;—*Held,* that in a subsequent action by A. against C. to enforce a lien on such securities, it was competent to prove that at the time of the compromise, it had been verbally agreed between A. and C. that A. should retain his legal claim to the securities, or the proceeds thereof, so far as they should come into the hands of C., as showing that C. had notice of the terms of the compromise.

*It seems,* that the assignment of the principal debt carries with it the necessary collaterals, and, if part of the principal debt is assigned, the assignee is entitled to a *pro rata* interest in the collaterals as incident, whether mentioned in the assignment or not.

William Dorsheimer brought an action in the Buffalo superior court against Asher P. Nichols (administrator of Aaron D. Patchin, deceased), and Isabella Patchin, to enforce an equitable lien on money held by the defendant, Mrs. Patchin. The facts on which the action arose, are as follows:

On September 29, 1859, Aaron D. Patchin owed the Chautauque County Bank seventy thousand dollars on certain notes and bonds. To secure the payment thereof, he on that day made over to the bank two hundred ninety-six thousand dollars in railroad stock. Shortly afterward the charter of the bank expired, and trustees were appointed, who sold to William Dorsheimer, the present plaintiff, two of the bonds on which Patchin was liable, and afterwards, on July 16, 1862, without any notice to the plaintiff or to Patchin, sold to George W. Tifft, one thousand four hundred and sixteen and a half shares of the railroad stock, given as collateral.

Aaron D. Patchin, at the time of the sale, had become insane, and his wife, Isabella Patchin, having been appointed his committee, in May, 1863, commenced an action to set aside the sale of the stock to Tifft, and to redeem the stock by paying the debt to secure which it was pledged.

The plaintiff and the bank's trustees were also made defendants in that action. Tifft only was served and appeared; but by permission of the court, a compromise of the suit was effected, to which compromise the trustees and the present plaintiff were parties; by the terms of which it was agreed, in consideration of thirty thousand dollars paid by Tifft to Mrs. Patchin, that she would ratify and confirm the sale of the collaterals by the bank to Tifft, and release the trustees from all liability. At the same time, Dorsheimer, the present plaintiff, also executed a release, by which he discharged the trustees from all liability, but reserved to himself his claims against all other persons.

The plaintiff now brought this action, claiming to have a lien on the thirty thousand dollars received by Mrs. Patchin from Tifft, as the proceeds of the collaterals.

The plaintiff recovered; and on appeal to the court at general term, the judgment was affirmed.

Defendant Nichols appealed to this court.

*A. P. Nichols*, for defendant, appellant.

*John Ganson*, for plaintiff, respondent.

By the Court.—POTTER, J.—There was no exception taken to the finding of facts or to the conclusion of law thereon, as

found by the judge on the trial. The only error complained of by exception, is, to the admission of evidence by the judge on the trial, "that at the time the release was given by plaintiff to the trustees of the Chautauque County Bank and others, of his (plaintiff's) claim to stock sold by said trustees upon which plaintiff claimed to have a lien, it was the express understanding between him and Mrs. Patchin, as committee of her husband's estate, that the plaintiff should and might retain whatever legal claim he had on the stock which was the subject matter of such action, to the extent which it would come to her hands by the settlement authorized by the order of the court in her behalf, in case she should elect to take stock, or the proceeds of it in case she should elect to take money in lieu of stock."

To understand the nature and point of this exception, it must be borne in mind that the plaintiff was at that time the assignee of a portion of the debt of the Chautauque County Bank, who held this railroad stock as their collateral security; that in law, the assignment of the principal debt carried with it the accessory collaterals, and, if part of the principal debt was assigned, the assignee was entitled to a *pro rata* interest in the collaterals as incident, whether mentioned in the assignment or not. The cases of Jackson *v.* Blodget, 5 *Cow.* 202; Green *v.* Hart, 1 *Johns.* 580, 590; Martin *v.* Mowlin, 2 *Burr.* 969; Pattison *v.* Hull, 9 *Cow.* 747; Curtis *v.* Tyler, 9 *Paige*, 432; Parmelee *v.* Dann, 23 *Barb.* 461, are cited to this point. I think the authorities cited sustain the proposition. If they do not, as there is no exception to reach the error, we cannot reverse it here.

The sale of these collaterals by the trustees of the Chautauque County Bank to Tifft, did not destroy the lien of the plaintiff thereto or therein. And such sale thereof, made at the time that A. D. Patchin (who had the equity of redemption therein) was of unsound mind, was void as against Patchin. The action therefore of Mrs. Patchin, as committee of her husband, to set aside this sale, was, of course, in its effect, to do so to the extent of her interest therein; which was, an equity of redemption in said stocks, subject to a lien of the plaintiff on such stocks. This was all the relief which the court could have granted her

in an action in which the plaintiff was a party. Mrs. Patchin was then the proper representative, and the legal owner of the title to such stocks subject to plaintiff's lien, and her acts in relation thereto were binding on the estate, and notice to her, in a matter affecting such estate, was notice, with all its consequences, to the true owner of the estate. Had judgment been rendered in her favor in her action, she would have recovered the stocks so sold, but such recovery would not in law have released the stocks from the lien of the pledge made of them by her husband, and which followed the debt as it was held, into the plaintiff's hands.

While this action was so pending, Tifft, the assignee from the said trustees, proposed a compromise of the action by giving to her thirty thousand dollars of said stocks, if she would ratify the sale of the whole, which such trustees had made absolutely to him, or give her thirty thousand dollars, the par value thereof. The trustees, being parties to the action, united in the offer of compromise. All of the parties knew of the plaintiff's interest therein. Mrs. Patchin applied to the court for permission to compromise, and it was granted. The said trustees and Tifft applied to the plaintiff to release his lien upon the said stock. The plaintiff did release, with the reservation to himself of "any and every lien, claim or preference which he might or could have, by reason of the said sale to him of the said indebtedness and securities, upon, in or to any or every sum of money, property or fund which had or might thereafter come into the hands, possession or custody of Isabella Patchin, committee, &c., of her husband."

It might perhaps be presumed that Mrs. Patchin knew of the terms of this release. It would be sufficient if she knew that her receipt of thirty thousand dollars of this stock in lieu of the whole, or the same amount in money, was to be on condition, or to be subject to the same lien to the plaintiff as the whole amount would be if she had recovered the whole. The whole stock, and every part of it, was subject to the plaintiff's lien until he released it. As to her, or to the estate she owned as committee, he did not release, but, on the contrary, expressly reserved his lien. Her knowledge, then, of the terms and conditions upon which this stock was received by her, was an important feature in the evidence. This knowledge could be proved in any legal

Dorsheimer *v.* Nichols.

manner. It was not necessary it should be a part of the record, or be a written acknowledgment, or be by a written notice. If she knew that the stock or its proceeds, upon which the plaintiff had a legal lien, was not released, she knew that as to him it existed as a lien, and could be followed into whose hands soever it might fall.

In this view I can see no error committed by the judge in permitting it to be proved, " that it was the express understanding between the plaintiff and Mrs. Patchin as such committee that the plaintiff should retain whatever legal claim he had on the stock which was the subject matter of such action, to the extent to which it should come into her hands by the said settlement authorized by said order in case she should elect to take stock, or to the proceeds of it in case she should elect to take money in lieu of stock."

As between plaintiff and Mrs. Patchin, if the settlement had been made without any understanding between them, he could, by virtue of the lien he held on the stock, have followed it or the proceeds into her hands. She represented the estate of her husband, he had pledged this stock to secure a debt he owed, the plaintiff was the owner of that debt and of that pledge for that purpose. The first pledgee had, without authority, undertaken to dispose of the property pledged. Mrs. Patchin, as the legal representative of the pledgor, claimed that such disposition was void, and commenced her action to avoid such sale. Terms of compromise were offered between the pledgee and their assignee and Mrs. Patchin. The terms were accepted, the arrangement made and perfected. By all this the plaintiff's rights were not affected. He relinquished nothing of his rights. The clearest equity protects his interest. It is not even necessary, I think, that Mrs. Patchin should have had knowledge of his rights. At all events, that she did have it, and that evidence was given that she expressly agreed to recognize them, is no error as against her or the estate she represented.

I think the judgment is right, and should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.