# CASES

# SUPREME COURT

## STATE OF NEW YORK,

IN MAY TERM, 1828, IN THE FIFTY-SECOND YEAR OF OUR INDEPENDENCE

---

### JACKSON, ex dem. GLOVER, against WINSLOW.

EJECTMENT for part of lot No. 68, in the town of Preble, in the county of Cortland : tried at the circuit in that county, January 3rd, 1827, before NELSON, C. Judge. ·

At the trial, the plaintiff proved that Samuel Crarath died seised of the premises in question between 15 and 20 years before.

He then produced a record in partition in the C. P. of Cortland, of the premises in question, between the heirs of Samuel Crarath, filed March 19th, 1819, by which it appeared that the commissioners of partition reported that the

*Possession of land is prima facie evidence of seisin.*

*A quit claim deed, or deed without warranty, by one having no title at the time willnotoperate to carry a title subsequently acquired by the grantor. Otherwise of a deed with warranty.*

A judgment debtor holding a deed of lands is seised as to his creditor, though his deed be not recorded pursuant to the statute. Hence, a conveyance or mortgage, *bona fide,* by him, intermediate the judgment and a sale on a *ft. fa.* will not defeat the latter sale; for this relates to the time of docketing the judgment.

A grantee, assuming the payment of a debt due from his grantor, is a sufficient consideration to make a purchase of mortgage of land valid within the registry acts, as against an unrecorded deed.

*Conceded,* however, that actual notice will supply the place of registry, and that notice to the agent is notice to the principal.

lands could not be divided, and that they were ordered to be sold.

*The plaintiff farther proved, that on the 26th of March, 1819, the commissioners conveyed the premises in question to Obed Crarath, who, on the 19th of September, 1820, conveyed to Jared Parsons in fee, who on the same day, mortgaged them to the lessor of the plaintiff, to secure the payment of $539,23. The deed to Jared Parsons was delivered to W. M. Allen. This deed and the subsequent mortgage were acknowledged and recorded the day of their date.

The defendant proved a judgment in the supreme court in favor of W. J. & A. Marvin against Noah Parsons, for $3015,25, perfected November 15th, 1817; a *fi. fa.* and sale of the premises in question upon the judgment to the Marvins, by deed in fee from the sheriff, dated January 16th, 1824; and a deed in fee from them to the defendant of the same premises, dated August 1st, 1825.

It farther appeared that, Obed Crarath, on the 1st of June, 1816, pursuant to a previous bond for a deed of the premises in question from him to Noah Parsons, conveyed in fee to the latter, for the consideration of his note of $67 at a year, which was paid when due.

On the 9th of July, 1818, Obed Crarath took back the deed from him to Noah Parsons. The deed was so taken back as security to Crarath against a note which he had signed with Noah Parsons to one Tallman. The deed was afterwards destroyed.

The deed from Obed Crarath to Jared Parsons was given at the instance of W. M. Allen, who informed Crarath that Jared Parsons had the bond for a deed which Crarath had given to Noah Parsons. The bond had not been given up when the first deed was executed.

A few days after executing the second deed the bond was given to Crarath. Allen did not inform Crarath he was agent for Jared Parsons.

Noah Parsons became insolvent in 1818 or 1819. The agent of Glover (the lessor of the plaintiff) requested one Mason to become obligated to Tallman for the note which

NEW YORK,
May, 1828.

Jackson
v.
Winslow.

Crarath signed with Noah Parsons; and Mason paid the note, which was $500. Allen now held this note.

*It further appeared that one Kellogg, previous to the note being taken up, came to Allen, in behalf of Glover, (the lessor of the plaintiff,) and wished to get Crarath's name off the note; and said if that could be done, Crarath would give a deed to Jared Parsons, and he to Glover. Kellogg's object was, to secure a debt due to Glover, (the lessor of the plaintiff,) from Noah Parsons. It was understood that Jared Parsons had bid off the premises on an execution from Noah Parsons, but that Crarath had a title to them. It was considered that the note to Tallman was an incumbrance on the premises; and if Kellogg could take up the note; Glover (the lessor of the plaintiff) was to have a mortgage from Jared Parsons for the amount of his debt against Noah Parsons. Allen, who drew the second deed, testified that Jared Parsons was not present at the time; and that he, the witness, did not communicate to him the fact that there was another deed, until after the execution and delivery of the mortgage. When he made the communication, Kellogg was not present.

Kellogg testified that on the 27th of June, 1818, Noah Parsons became indebted to Glover, (the lessor of the plaintiff,) in $481 66; that he came to Courtland county as the agent of Glover, to secure his demand; Noah Parsons agreed to secure it, and informed him that Jared Parsons owned the property in consequence of a purchase made at sheriff's sale; that Crarath had not conveyed the property to Jared, because he was liable on the note to Tallman, but that he would convey it on being indemnified against the note; Kellogg procured Mason to secure this note, and Allen then discharged Crarath from it; whereupon Crarath executed the second deed to Jared Parsons, and he executed the mortgage to Glover, (the lessor of the plaintiff;) that Noah Parsons never informed him (Kellogg) that Crarath had given a deed to Noah Parsons, nor did Kellogg know of that deed, until the mortgage was given and recorded, but he understood the premises were paid for by Noah Parsons, and had been sold on the oldest judgment

[*16]

against him; Kellogg did not know of the judgment of the Marvins.

The defendant gave in evidence a judgment of the Courtland C. P. in favor of one Clark against Noah Parsons, for $1106 70, perfected September 15th, 1819, and a sheriff's *deed of the premises in question under a *fi. fa.* upon that judgment, to Jared Parsons.

Verdict for the plaintiff, subject to the opinion of the supreme court, on a case containing the above facts.

*D. Cady* for the plaintiff. The deed of 1816, from Obed Crarath to Noah Parsons, was never recorded; and must therefore, be deemed fraudulent and void as to the lessor of the plaintiff, who is a *bona fide* purchaser. No actual personal notice can be pretended; nor was there any notice to his mortgagor.

But suppose, for the sake of the argument, that the lessor of the plaintiff and his mortgagor acted with full notice; Obed Crarath, when he gave the deed to Noah Parsons, had no title; and the title which he afterwards acquired did not enure to the benefit of Noah Parsons, his grantee. The first title which Obed Crarath had was under the partition deed. The deed from him to N. Parsons contained no warranty of title; it must be taken to have been a mere quit-claim, and, as such, it is well settled, could never operate to carry a previous title.

Again: the deed to Noah Parsons was surrendered to the grantor, Obed Crarath; and though this act would not pass back the title, yet it amounts to the same thing as to the grantee. He has voluntarily deprived himself of the evidence of title. The deed was voluntarily destroyed, and he shall not be permitted to set it up.

*J. A. Spencer*, contra. Though there was no registry or actual notice to the lessor of the plaintiff, or his mortgagor, of the deed to Noah Parsons, yet it is enough that there was constructive notice. This existed. Notice to the agent is notice to the principal. (Jackson *v.* Sharp, 9 John. 163.) Allen, the attorney employed by Kellogg to obtain

the second deed from Obed Crarath to Jared Parsons,
knew, at the time he obtained it, that Crarath had before given a deed to Noah Parsons. This is notice, both to Jared Parsons and to the lessor of the plaintiff.

Kellogg, the agent of the lessor of the plaintiff, had knowledge of circumstances enough to put him upon his enquiry as *to Noah Parson's title to the premises. If he was ignorant of the fact that Noah Parsons had a deed from Crarath, it must have been because he was careful not to know it. He knew the premises had been paid for by Noah Parsons, and understood that they had been sold on the oldest execution against him. How should all this happen, if Noah Parsons had no title ? He knew that Crarath was to give the deed to Jared Parsons, without receiving any equivalent, and that Jared Parsons should at once mortgage the premises, to secure Noah Parsons' debt. How could all this take place, unless Noah Parsons was really the owner ? The note signed by Crarath, as the surety of Noah Parsons, to Tallman, was understood by Allen and Kellogg to be an incumbrance, and to get rid of this circumstance, they procured Mason as a substitute for Crarath. Was not all this sufficient to excite Kellogg's suspicion ? to have opened his eyes, if he had not purposely winked so hard as not to see any difficulty in the way of securing Glover's demand ? Allen does not swear that when he communicated the fact of the previous deed to Jared Parsons, which was after the mortgage given, that this was news to Jared. He had known of Noah Parsons' claim. He must have known it, for he had himself become the purchaser of his (N. P.'s) right at sheriff's sale.

The fact that Obed Crarath purchased the premises in question from the commissioners in partition in 1819, does not prove that he had no title, or a defective one in 1816, Whatever advantage Crarath derived under this purchase, enured to the benefit of Noah Parsons, his former guarantee.

Glover (the lessor of the plaintiff) is not a subsequent *bona fide* purchaser, or mortgagee for a valuable consideration, within the meaning of the 4th section of the act con-

[*17]

NEW YORK;
May, 1828.
───────
Jackson
v.
Winslow

[*18]

cerning deeds. (1 R. L. 370.) He gave no credit to any one. He created no new debt in consideration of taking the mortgage. He took it on an old debt, paying nothing whatever for the mortgage. It was no payment or extinguishment of the former debt; but merely a collateral security; and if not paid, Glover may prosecute Noah Parsons on the original consideration of the debt. (Cumming v. Hackley, 8 John. 202. Green v. Hart, 1 John. 580.) This mortgage is a mere security *of a pre-existing debt. (Jackson v. Willard, 4 John. 42, and cases there cited.)

*Curia,* per WOODWORTH, J. Here is no evidence that Obed Crarath, when he conveyed to Noah Parsons, in 1816, had any title. It stated that he gave a deed. This, of itself, is not sufficient to warrant a presumption of title: neither does the fact that Noah Parsons paid him a consideration, afford any additional support. These acts may have been performed under a belief that title was acquired, when in reality none passed. They fall short in making out, *prima facie,* competent evidence that Obed Crarath had any interest in the land. If we examine the rest of the testimony, the presumption appears to be strong that the title of the premises was acquired by the deed from the commissioners.

It appeared that Samuel Crarath died in possession; which is, *prima facie,* evidence of seisin. [1] Commissioners were appointed to make partition among his heirs. Who they were is not stated. It does not even appear from the case, that Obed Crarath, although of the same name, was an heir. For aught that appears, he may have been a stranger. It is enough, however, to say that the only evidence of title in him is derived from the commissioners' deed, executed in March, 1819.

It is argued by the counsel for the defendant, that this deed enured to the benefit of Crarath's guarantee in the

[1] *Per* SAVAGE, Ch. J. in Livingston *v.* The Peru Iron Co. 9 Wen. 520, 1. Bell *v.* The Commonwealth, 1 J. J. Marsh 550. *Per* LORD, Ch. J of Ireland, 3 Ridgw. P. C. 291, N. Ricard *v.* Williams, 7 Wheat. 59. Cook *v.* Wilson's adm'rs, Lit. Sel. Cas. 469. 1 Dom. B. 3, tit. 6, § 4, Art 1.

deed of 1816. Here also another difficulty lies in the defendant's way. We are left entirely in the dark, whether this deed was a mere quit-claim, or contained a covenant of warranty. It may have been either. The defendant, therefore, has not disclosed matter sufficient upon which to raise either the technical doctrine of estoppel, or to make the conveyance enure to the benefit of Noah Parsons and his assigns.

In McCracken v. Wright, (14 John. 194,) it was held that by a quit-claim deed no title not *in esse* at the time would pass : [1] though when there was a warranty, it would operate as an estoppel, for avoiding circuity of action. The doctrine is laid down in Co. Lit. sec. 446, and p. 265, a. b., that by a release no right passeth but the right which the releaser hath *at the time of the release made ; as if the son release to the disseisor the right which he hath or may have, without clause of warranty ; after the death of his father, the son may enter against his own release, because he had no right at all at the time of the release made, the right being at the time in the father. (Jackson v. Hubble, 1 Cowen, 616, S. P.)

[*19]

It follows, if this view be correct, that the second deed given by Obed Crarath may be set up by the grantee deriving title under it ; and that it cannot be urged in support of the supposed title of the grantee under the first deed, for the reason that the defendant has not shown affirmatively that there was a warranty. The question of estoppel, therefore, does not apply on the facts before us.

But if, for the sake of argument, it be conceded that the title passed by the deed of 1816, then, inasmuch as that deed

[1] Pettereau v. Jackson, 11 Wen. 110. Dart v. Dart, 7 Conn. 250. Tooley v. Dibble, 2 Hill 641. Jackson v. Peck, 4 Wen. 300. But if the grantor represents himself in the quit-claim as the owner of the premises, both he and those claiming under him will be estopped from alleging the contrary. Per Chancellor, in Jackson v. Waldron, 13 Wen, 189. But as the grantee holds adversely to the grantor, he is not estopped from denying that the grantor had any title in the premises conveyed, either at or previous to the deed ; Averill v. Wilson, 4 Barb. S. C. Rep. 180 ; or that the grantor was seised of such an estate in the premises as to entitle his wife to dower. Sparrow v. Kingman, Comst. 242. See further 4 Kent † 261. Note c.

has never been recorded, is the plaintiff affected by notice? There is certainly no express notice; although, perhaps, in a proper case, the facts might be sufficient to put the party on inquiry. If there was notice, it was given to the agent The lessor of the plaintiff does not appear to have been personally acquainted with the circumstances attending the giving of the mortgage, or the time it was given. Kellogg was the agent of the lessor of the plaintiff for the purpose of obtaining security for his debt against Noah Parsons. It was represented to him that the title was in Obed Crarath, that Noah Parsons had paid for the land, and held a bond for a deed, and that Jared Parsons was equitably entitled to the land by reason of a purchase made by him at a sheriff's sale under a judgment against Noah Parsons, entered in 1819. As to this purchase, it may be here observed that the title of Noah Parsons, if he had any, was subject to the lien of Marvin's judgment in 1817, and was afterwards transferred to them by the sheriff's deed, 1824. In truth, Jared Parsons, in 1820, when this arrangement took place for securing the debt of the lessor of the plaintiff, had no estate or title whatever, unless the commissioners' deed of 1819 to Obed Crarath operated so as to enure to the benefit of Noah Parsons, the grantee in the deed of 1816; and if it did so operate, then indeed Jared Parsons might have acquired a title liable to be *defeated by a sale under the Marvins' judgment, which subsequently took place. Upon the supposition that the first deed was rendered valid by the execution of the commissioners' deed to Obed Crarath, still it was an unrecorded deed; and I perceive no objection in such a case to Jared Parsons or any other persons, for valuable consideration and without notice, accepting a conveyance from Noah Parsons, in whom upon this principle, the title was vested. But here it is evident the parties acted under a misapprehension of the state of this title, provided it be conceded that the commissioners' deed to Obed Crarath operated as a confirmation of the deed previously given to Noah Parsons; for in that case Noah Parsons was the person to convey; and had he executed the deed to Jared Parsons, and the latter executed

[*20]

the mortgage to the plaintiff, then this question would be presented : If a judgment be rendered against A., who, in judgment of law, is, at the time, seised by virtue of a conveyance not recorded, and afterwards the land is sold under the judgment, and a conveyance executed, can that title be defeated by a purchaser who obtains a deed from A. subsequent to the judgment, but before a sale under it ? I think it cannot ; because the sheriff's deed relates back to the time of the judgment ; and the command of the *fi. fa.* is to cause the money to be made of the lands whereof the debtor was seised on the day of the rendition, or at any time afterwards. If this position be correct, then it follows that the purchaser under the judgment is not called on to make out notice of the first deed. The question does not arise.

If, however, I am mistaken on this point, and the judgment creditor is exposed to the risk of being defeated by reason of a deed from the defendant in the judgment subsequent to its rendition, then the question of notice would become material. But here it cannot arise, because no deed was procured from Noah Parsons. As to him, his title remains as it was. He has done no act to divest it.

It seems to me, therefore, that the doctrine of notice may be laid out of the case. Admitting that the agents of the lessor of the plaintiff, when they procured a deed from Obed Crarath to Jared Parsons, and at the time he mortgaged, *knew that Crarath had given a deed previously to Noah Parsons, such knowledge would be immaterial on the fol lowing grounds : *first*, because if Crarath, in the first deed, merely released or quit-claimed when he had no title, which it appears he had not, then nothing passed ; and the lessor of the plaintiff or Jared Parsons was justified in accepting a deed. They were not bound to notice a conveyance altogether inoperative. If, on the other hand, the first conveyance of Crarath was confirmed by the commissioners' deed to him, then the land became bound by Marvins' judgment ; and Crarath had nothing to convey, whether there was notice or not.

[*21]

If this cause had turned on the point whether the mort-

NEW YORK,
May, 1828:
———————
Corwin
v.
Davison

gage was made upon good and valuable consideration, I think there is no cause to question it on that ground. A debt against Noah Parsons, assumed by Jared Parsons, was undoubtedly a sufficient consideration.

The result of my opinion is, that, on the facts stated in the case, the plaintiff is entitled to judgment. My opinion rests on this ground: that Crarath having conveyed in 1816, and it not appearing that he then had any title, or that the deed was with warranty, nothing passed; and consequently there was nothing upon which the lien of the Marvins' judgment could attach; and that Crarath, after he obtained title by the commissioners' deed, was at liberty to convey that title to any purchaser or mortgagee for valuable consideration. The deed to Jared Parsons, and his mortgage to the lessor of the plaintiff, entitled him to recover.

But as it is more than probable that material facts are not before us; particularly as the attention of the parties does not appear to have been directed to the question whether Obed Crarath had any title in 1816, and what was the form of the deed or conveyance by him then executed, upon the ascertainment of which facts the cause may assume a different aspect, I think the ends of justice require that a new trial be granted, with costs to abide the event.

Rule accordingly.