1839.

Dunham
v.
Gates and oth-
ers.

</div>

---

## DUNHAM v. GATES AND OTHERS.

Two defendants united in an answer. The one, an assignor, met the allegations of the bill on his own knowledge, and the other, an assignee, on information and belief. The answer of the latter does not fall within the rule requiring two witnesses to prevail against it. Nor can it be aided by the answer of the other.

But if a replication is filed, and no proof taken, such answer is the only ground for a decree, being sufficient to raise the issue. And if the complainant cannot sustain his case by it, his bill must be dismissed.

The extent of the rule as to an answer being responsive noticed and cases examined.

The teste of the application of the rule seems to be, whether the question answered would be proper in a trial at law, whether it would be relevant to the issue; such as the witness would be bound to answer; and the answer be competent testimony.

The admissibility of an answer as responsive does not settle its credibility. It may refute itself.

THIS cause was submitted on written arguments. <span style="float:right">Nov. 4th.</span>

The bill in this cause was filed for the purpose of set-ting aside a mortgage executed by Cornelius Gates to Gerrit Gates, dated the 7th day of April, 1826, and after-wards assigned to the Chesters. The complainant was a judgment creditor of Cornelius by a judgment docketted the 20th of September, 1822. The bill impeaches it as given in anticipation of the judgment, and to defraud the complainant; that it was without consideration, either from value then paid, or any pre-existing debt. A repli-cation was filed, but no testimony taken. The cause was submitted on written arguments.

1839.

Dunham
*v.*
Gates and oth-
ers.

*Mr. R. Manning*, for the complainant.

*Mr. O. Bushnell*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR :—The point which has been most labored in this cause, and probably the most important one in it, is, how far the answer of the defendant, Gerrit Gates, is evidence against the complainant. I speak of the answer of Gerrit Gates because, although the other defendants unite in it, yet the leading facts are by them stated on information, and by him on knowledge ; and because, if as to the other defendants the answer does not sustain the bill, there is no proof whatever to do it.

The bill alleges as to the bond and mortgage, that it was executed in the anticipation of the judgment being obtained, with a view to cover the property inherited from his father, from such judgment ; that the consideration was nominal, but the sum expressed was about the value of his share of the property ; that Gerrit did not pay, lend, or advance to Cornelius any sum of money, but that the mortgage was with a view to prevent the plaintiff getting any advantage of his judgment, and that Gerrit should hold the property in trust for him Cornelius, or for their joint benefit.

The bill also alleges that at the time of giving such mortgage, Gerrit Gates was insolvent himself ; was not able to pay his own debts, much less did he possess ability to loan money to others. In the charging part of the bill the complainant states the pretence of the money having been actually advanced, and charges the contrary ; and that the mortgage was voluntary and fraudulent ; made to defeat the judgment, and in trust, &c. Next it sets forth a pretence that Cornelius was then indebted to Gerrit in the said sum of $2,878, and such mortgage was executed to secure such debt, and charges that he will not discover how Cornelius became indebted to him ; and says if there was such debt it has been discharged ; that Cornelius was not to pay the amount. The bill interrogates, whether the

said Cornelius did not agree with Gerrit to give him the bond and mortgage, and what was the particular agreement between them in that respect, and what were the terms thereof, and if not for a nominal consideration of $2,878, to be expressed in such bond and mortgage, for what other consideration ; whether any payment was in fact made to Cornelius, whether it was not made to prevent the complainant obtaining any benefit from his judgment, and that he might hold the same in trust for Cornelius, *or what in particular were the reasons or inducements for the said Cornelius to make, or the said Gerrit to accept, the said bond and mortgage.*

There are then very special interrogatories founded on the charge of Gerrit's inability to advance the money ; how he paid it, where he obtained it, &c., and also interrogatories founded upon the pretence of Cornelius being indebted to him, as when and how he became so indebted, and whether, if indebted, it had not been satisfied. The bill then asks what passed between them on the occasion of proposing the mortgage, and whether he did not accept the mortgage with a view to defeat the legal effect of the judgment ; *or for what other reason or motive ; and what in particular was understood or agreed between them in respect thereof.*

I think the interrogatories may be resolved into the following : Was not the consideration wholly nominal, and a pretence ? Was not the object of the mortgage to defeat the expected lien of the judgment ? If not such, what was the inducement and reasons for making it ?

To these inquiries the defendant answers. That Cornelius had received from John, his father, large sums of money which were charged to him in the books, and from his mother other sums also so charged. That being so indebted and unable to pay the debt except by his undivided fifth part of his father's estate, it was proposed that he should execute a mortgage for the same to his mother to secure the amount. Afterwards it was determined between the mother and Gerrit, that the mortgage should be given to him, and that he should give a note to his

mother for the same amount ; the note being at that time considered as perfectly good. The reason given for this arrangement is, that Gertrude was a woman, over sixty-eight years of age, and thought she could manage a note better than a bond and mortgage. That under the arrangement, the amount due was adjusted at the sum of $2,978. That it was agreed to take Cornelius' note for $100, and the mortgage for the residue, payable in one year with interest ; that on the 7th of April, 1826, the arrangement was completed, the notes given, the books balanced, and the bond and mortgage executed. Gerrit afterwards expressly denies taking the mortgage with a view to defeat the judgment or to put the property out of the reach of creditors of Cornelius, but says it was taken and given to pay the debt so justly due originally to his father, and so transferred to him. That he expected to pay the note, and was then able to do so. The denial and averment on page 17 of the answer are also full.

The general rule of the court, that an answer is available as evidence of facts when responsive to the bill, is as well established as its application is difficult. In the important case of *Hart* v. *Ten Eyck*, in the court of errors, the doctrine was carried to the length of holding, that upon a bill for an account against an executor, under the general prayer that he might set forth the monies come to his hand and the disposition of them, the credit side of his schedule was to be taken to discharge him. We must now submit to this decision as the law of the land ; but it may not be a breach of due respect to observe, that the eloquence, ingenuity and talent of the eminent counsel in that cause, Mr. Emmet, achieved a triumph over the law of more than a hundred years. The court of appeals in Maryland refused to follow the decision, and all subsequent English cases hold a different doctrine. See the case of *Hart* v. *Ten Eyck*, stated *Hoffman's Master in Chancery*, p. 417. *Rinngold* v. *Rinngold*, 1 *Harris & Gill*, 81. *Robinson* v. *Scotney*, 19 *Vesey*, 582.

There have been some later cases which have a more close application to the present.

In *Woodcock* v. *Bennet*, (1 *Cowen*, 728. 742,) the allegation in the bill was "that the defendant when alone or "in company, D. and P. B. Jr., one or both, procured from "G. B. the agreement with other papers, and either held "or secreted the same, or caused them to be destroyed." The interrogatory was how the contract had been disposed of, when, where and how the defendant got possession of the agreement. The answer averred "that about the 27th "of December, 1816, the complainant went to Ithaca, and "by consent of all the parties, the agreement was taken "up and rescinded, the seals being torn off by the express "consent and in the presence of the complainant." It was held that the answer was responsive to the bill, and within the discovery sought.

In *Briggs* v. *Penniman*, (8 *Cowen*, 393,) there was an allegation in the bill of a company having lost or expended all its property, and of its being bankrupt. An interrogatory was inserted to that effect. The defendants in the answer averred that certain of them were creditors of the company. There was no proof of the fact, and the question was, whether the averment was responsive. It was held it was not so. The question, whether the company was insolvent, had no connection with the question whether the stockholders, or some of them, were among the number of creditors.

It may be observed in connection with this subject, that the court has been willing to rely upon slight circumstances in order to support a single witness against a denial in an answer. See *Gresly's Eq. Ev.* p. 4, *and cases n. f.* In *Warren* v. *Taylor*, (1 *C. P. Cooper's Rep.* 174,) where there was an allegation that the defendant was to execute a bond of indemnity against certain debts of a firm from which the complainant had retired, the agreement was denied. One witness deposed to it. The vice-chancellor said there could be no decree, observing that upon the whole, the facts affirmed by the answer were not less probable than those affirmed by the deposition.

In the case before me however the answer is unopposed by any testimony.

It appears to me that the true test of the inquiry upon the force of an answer is, to suppose the case was upon a trial before a jury. The propriety of a particular question addressed to a witness is to be determined, by its relevancy to the issue, by the fact whether the witness can be compelled to answer it, and by the fact whether the answer will furnish legal testimony. Now bring the present interrogatory to the trial of these tests. The issue is, whether the mortgage was not fraudulent and to defeat the judgment. The reply being in the negative, a question *what was* the object in giving it, is plainly relevant. The witness could certainly be compelled to answer it, and upon an issue of fraud, the reply of a witness present when it was executed would be legal evidence. I look upon the answer therefore as evidence in the matters averred.

But the question of credibility is very different from that of admissibility. The court is not compelled to believe the answer, though bound to receive it. It may carry its refutation within itself; and of course the court is to decide whether the facts as sworn to, make out a case to bar the relief.

In addition to the statements of the answer already quoted, it is averred, that when the bond and mortgage was taken, he, Gerrit, knew of Cornelius having been sued by the complainant. Again enough is admitted to justify the court in considering him to have been greatly embarrassed, if not insolvent. He says (p. 17,) that suits have been brought against him for debts he owed at different times for the last seven or eight years, on which judgments have been from time to time perfected ; but that he contrived to pay his debts and satisfy the judgments until after the execution of the bond and mortgage. The answer was sworn to on the 14th of February, 1832; and hence suits must have been proceeding against him as early as 1824 or 1825.

Under the pleadings as they stand, I cannot find myself at liberty to disbelieve that a debt existed from Cornelius to his father and mother, charged to him on the books.

It may be questioned whether the debt to the father was such an advancement as could be legally charged to Cornelius. First, I doubt whether, before the Revised Statutes, any monies advanced by a father could be charged against the child's share of real estate descended, unless so directed. Next, it seems to have been the general rule, that a legal advance was money given by way of portion or preferment to set the child up with. (*Elliott* v. *Collier*, 1 *Vesey*, *sen.*, 16.  *Morris* v. *Burroughs*, 1 *Atk.* 403.  3 *P. Wms.* 317, *n. o. and cases.*  1 *R. L.* 1813, 313, § 16.)  By the Revised Statutes, (1 *R. S.* 754, § 26,) the maintaining or educating, or the giving money to a child, without a view to a portion or settlement in life, shall not be deemed an advancement.

The sections respecting such advancements were introduced into the statute of descents by the legislature. (*Reviser's Notes*, vol. iii. p. 605.)  But I do not pursue this inquiry, because the fact of the advance by the father, was a good consideration for the mortgage, even if there was no such advance as could have been deducted from a share of real estate.

The case is extremely suspicious; the indications of fraud are great; but as the pleadings stand, I feel compelled to say, that as between Gerrit Gates and the complainant, this court cannot, on the bill and his answer, give relief.  I need not, therefore, enter into the very nice question, whether the Chesters could stand upon a better footing than Gates himself.

Counsel say that the answer of Gates cannot be used on behalf of the Chesters.  That is true.  As a piece of evidence, it cannot be used.  But suppose that answer is out of view,—then the questions arise upon the answers of the Chesters, who state these matters on information and belief.  Such an answer would not avail, if there was a single witness to establish the bill, or refute the answer. But the statement upon information and belief, is sufficient to raise the issue.  And if no evidence is gone into, how must it stand?  The mortgage is anterior to the judgment. It must be taken to be valid, and made *bona fide.*  The

complainant has not supported a single allegation which he makes to overturn it, by a particle of testimony. It must therefore stand.

The bill must be dismissed without costs.