Mr. Johnson, special judge, delivered the opinion of the Court. A. considerable range has been taken by the counsel in the argument of this case; but the only question which we conceive to be necessarily involved, and one too that will fully dispose of it, relates to the sufficiency of the conveyance tendered by Hill, the principal in the note. The action was debt, founded upon a promissory note in which Hill was principal and Witter security; the defence interposed, payment, and in order to sustain the plea an attempt was made to show that the plaintiff below purchased the land of Hill, the principal, and received a conveyance from him in full satisfaction and discharge of the note sued upon. The point then to be determined, is, whether such contract of purchase has been executed on the part of Hill according to its true meaning and intent. It is shown by the evidence that Hill made a proposal to the Trustees of the Bank to pay a portion of his debt at the Washington office with certain lands lying in the county of Hempstead, for six thousand dollars, in Arkansas money, and that on motion it was ordered that, if said lands should be examined and valued by some disinterested individuals to be as represented, the board would take them at the sum mentioned, and that the same was then referred to Albert Pike, the attorney of the Bank. This order was regularly entered upon the record of the proceedings of the Bank. It further appears that the valuation was made by persons selected for that purpose and that the same was approved by Mr. Pike, in pursuance of the authority vested in him by the order; which approval is as follows, to wit: By virtue of the authority in me vested by the board of Trustees of the Real Estate Bank, I do agree and consent to take in payment of so much Qf the debt of Gen. George Hill to said Trustees, his lands on Plumb Creek, according to his proposition to them, and at the price offered by him; and signed Albert Pike, atto. Trustees R. E. Bank. The witness and attorney Pike stated that this approval was written by him and sent to Hill on the 8th of June, 1846. After this follows a receipt purporting to have been executed by Thomas W. Newton, the cashier and secretary of the Trustees, This is as follows, to wit: Office of the Trustees of the Real Estate Bank of the State of Arkansas, Little Rock, 11th September, 1847. Received from Gen. Geo. Hill fifteen hundred and fifty-seven 73-100 dollars, which sum will be in full of his indebtedness to the Real Estate Bank up to this day, whenever he shall duly execute a deed of conveyance to certain lands in Hempstead county as per order of the Trustees, and signed Tho. W« Newton, Cr. & Sec’y.' This with the addition of a short extract of a letter purporting to have been written by Newton to the Rev. J. Custar, bearing date May 27, 1849, is. believed to be all the testimony that has any material bearing upon the question before the court. The extract referred to reads thus, “Mr. Pike has not yet returned home, but so soon as I get the description of the lands deeded from Gen. Hill to the Trustees in payment of his indebtedness, the proper entries will be made, the notes cancelled and forwarded to you.” We will now proceed, upon this state of facts, to enquire whether the defendant below succeeded or not in establishing the truth of his plea. Hill, the principal in the note, proposed to convey certain lands to the Trustees in part payment of his indebtedness to the Bank, which proposal the Trustees acceeded to upon the conditions expressed in the order already referred to. Have' those conditions been performed and complied with on the part of Hill ? It is conceded that he caused the lands to be examined and valued, and also that he communicated the result to the attorney and agent of the Bank, and that he received from the agent his entire approval. But the question still recurs, did or did he not make and deliver the deed of conveyance according to the terms of the contract entered, into by the parties. Can it be that, where a party engages, for a valuable consideration, to execute a conveyance in fee simple for land, a mere mortgage or quit claim deed would be such a performance on his part as to entitle him to the purchase money, or to be relieved from a debt which he might be owing to the other party? We are clearly of opinion that it would not. This would not be carrying out the true intent and meaning of the contract, and, as a matter of necessity, the vendor having failed to perform one of the essential conditions, he could not be heard in an attempt to enforce it. A quit claim deed passes only the right which the grantor has at the time of making the deed; and though he subsequently acquires a valid title, it will not enure to the grantee, unless the deed is with warranty, in which case it will enure to prevent circuity of action. (See Jackson vs. Hubble, 1 Cow. 313. Jackson vs. Winslow, 9 Cow. 18. McCracken vs. Wright, 14 J. R. 194. Co. Litt. sec. 146, p. 265 a. b. Jackson vs. Peek, 4 Wend. 305.) According to these authorities, the deed executed by Hill would* doubtless, operate by way of estoppel so far as himself and his heirs, or those claiming under him, are concerned, because of the warranty to that extent. But where a party agrees to convey land, and there is nothing, said as to the nature and extent of the title to be conveyed, nor any thing connected with the transaction going to indicate the particular species of conveyance intended, the law implies a deed in fee simple and with covenants of general warranty. The legal effect of an agreement to sell is.to convey by deed. (See Thomas vs. Van Ness, 4 Wend. 553.) This agreement was to convey in general- terms, and, as a matter of course, under the authority of the cases cited, a mere release or quit claim deed could not satisfy the agreement. The operative words in the deed are, convey, remise, release, and forever quit claim. The vendor does not use the words grant, bargain and sale, nor does he conclude with a covenant of general warranty. It is clear, therefore, that, in no event, can it be considered as going beyond a mere release or quit claim; and, if so, it is equally manifest that it does not confer such a title upon the Trustees as Hill agreed to convey, and. consequently, it is not such a one as they were under any obligation to accept. It is laid down by Powell, in his work upon Contracts, at page 395, that if there be in the terms of the contract any obscurity or dubiousness, which cunnot be cleared up by the intention of the contracting parties, or any other circumstances, and all other rules of exposition of words fail, then the construction ought to be against him who ought to have explained himself, or made the other have delivered himself fully. And, therefore, he who is obliged, ought to speak clearly, or otherwise, in general, the other party has a right to explain the clause for his own advantage. Therefore, if two tenants in common grant a rent of ten shillings, this is several, and the grantees shall have twenty shillings; but if they make a lease and reserve ten shillings, they shall have only ten shillings between them. According to this rule of interpretation, if there was nothing at hand to aid us in arriving at the true intent of the parties in respect to the real character and extent of the conveyance contracted for, the law would exact of Hill a deed in fee simple with covenants of general warranty, as such a construction would be strongest against him, and most in favor of the Trustees. But, in the present case, we do not feel called upon to resort to the rule of construction there laid down, as the terms of the contract themselves, when taken in connection with the object of the purchase, afford ample evidence of the intention of the parties. The Trustees held the note for money, and, as a matter of pure accommodation to Hill, the principal debtor, and without any apparent advantage to themselves, they agreed to release him from his indebtedness, and to take a conveyance for his lands in lieu thereof. It does not appear by the record that the Trustees entertained any doubt of the entire ability of Hill to pay the debt in money, and that they, therefore, were willing to accept less than a fee simple title with covenants of general warranty, but, on the contrary, the plain and obvious inference to be deduced from the whole transaction, is, that they were induced to go into the arrangement solely for his benefit. Under this View of the case, it would be utterly unreasonable to suppose that he intended to offer, or they to accept, a less title than the one we have already indicated. Besides this, the Trustees, in taking land for debts, take them in trust for the benefit of the creditors. They take them, if at all, to sell again. The sole object is to convert them into money, and this they are bound to do; and it must have been well known by them that no one would pay the full value of land, when it was held only by a quit claim deed. The witness and agent of the Board testified that, after the death of Hill, a deed was handed to him for the lands, that the deed was executed just before his death, but that the same being only a quitclaim deed,he declined receiving it on the part of the Trustees. This, under the view which we have taken of the whole case, he was fully warranted in doing, both upon principle and authority. There can be no pretence of an acceptance of the deed on the part of the Trustees, since the attorney and legal adviser of the Board rejected it, and there is no showing that it was ever submitted to the Board for its acceptance. But it is contended that the deed comprehends every incum-brance upon the title, except the stock mortgage, and that of this defect the Trustees have no right to complain, as they were fully in possession of its existence before they agreed upon the purchase. The language of the deed most assuredly will not warrant such a construction. It is as follows, to wit: And I the said George Hill, for myself and my heirs, .executors and administrators, do covenant with the said Trustees, their successors or survivors in office, that the premises are free from all incumbrances made or suffered by me except a mortgage to the State of Arkansas, and that I will, and my heirs, executors and administrators, shall warrant and defend the same to the said Trustees for the said Bank (except against the said mortgage) forever against the lawful claim and demand of all persons claiming by, through, or under me, but against none other.” The language here used not only excepts the mortgage executed to the Bank, but it is expressly confined to incumbrances made or suffered by himself. Under a contract to convey an absolute title with covenants of general warranty, and which we have already adjudged to be the legal effect of the contract now under consideration, it is not sufficient for the vendor to warrant against himself and those claiming under him, but he is also required to warrant and defend the title against all persons whomsoever. The Trustees had an undoubted right to have the title defended against every latent defect that may have rested upon it, as well before as after its acquisition by Hill, the vendor. But at this point we are met by the counsel of the plaintiff in error, and are referred by them to the admissions of record. It is insisted that the Trustees cannot be heard to object to the deed, since they have admitted, upon the record, that the “records of deeds and mortgages for said county of Hempstead, show that when said Hill executed said deed to said Trustees, and the same was recorded, he had a regular chain of paper title to him from the government of the United States, showing upon their face a fee simple title in him, discharged from all claims or incumbran-ces, other than the incumbrance created by said stock mortgage.” Now, it will be readily admitted that, in the face of the facts thus disclosed, the Trustees could not complain of the exception as to the incumbrance created by the stock mortgage. But the point to be settled is, whether the testimony is of such a character as to excuse a general warranty with the exception of such mortgage. True it is, that it was admitted upon the trial in the court below, that the records showed a regular chain of paper title from the government of the United States down to Hill, the vendor, and that it was discharged from all claims or incumbrances, other than the incumbrance created by the stock mortgage. The question here is, whether the testimony referred to, is equivalent to an admission that the title was wholly free from any defect whatever, except the stock mortgage, and that, consequenctly, the Trustees did not desire a warranty as against any other incum-brance; or does it simply import that the whole records of the county of Hempstead showed no other claim or incumbrance. The latter would seem to be the true meaning of the admission, as the former would involve an impossibility, if not an utter absurdity. The records, doubtless, do not show any other incum-brance, blit how it is possible for them to show affirmatively that there are no outstanding titles or incumbrances, it would be truly difficult to conceive. We do not learn from the record through how many persons the title passed from the Government before it reached Hill, the present vendor; and even in case it had shown that he was the patentee himself, it could not have aided the admission, as even in that evdnt it would not have necessarily followed that there was no superior outstanding title. Patents themselves, though regarded as one of the highest evidences of title, are by no means conclusive, since they are sometimes vacated and set aside, and have to give place to a superior title, which may have accrued under a pre-emption law, or in some other manner. Another objection urged against the deed is, that it does not show a i'elinquishment of dower by the wife of the vendor. This is well taken. True it is that the wife appeared before the justice, .and acknowledged that she freely and voluntarily relinquished her right of dower in the lands .described in the deed. A mere acknowledgment is not sufficient to satisfy the requisitions of the statute. The provision upon this subject is the 1st sec. of ch. 37, Rev. Stat. It is that, “A married woman may relinquish her dower in any of the real estate of her husband by joining with him in a deed of conveyance thereof, and acknowledging the same in the manner hereinafter prescribed.” It is clear that she has not joined her husband in the deed in question, and consequently her right in dower did not pass to the Trustees. To this, they were entitled under the terms of the contract. We are satisfied, therefore, that the deed is not such an one as the Trustees were legally bound to-accept, and that consequently the plaintiff in error did not succeed in establishing his plea of payment. The judgment of the Hempstead circuit .court herein ren-4ered, is consequently in all things affirmed. Chief Justice Watkins did not sit in this case.