ELIZABETH L. MORRIS, BENJAMIN D. P. MORRIS AND JAMES M. GREEN, executors of Jacob W. Morris, deceased, appellants,

*v.*

PETER WHITE, respondent.

1. If a judgment creditor have notice of the execution of a prior unregistered mortgage, it is of the same effect, as to him, as if it were registered.

2. Where there is no fraud shown, the fact that a judgment creditor knew that a mortgage was intended and being prepared, will not deprive him of the right which a creditor has to secure a just debt by greater vigilance and promptness.

3. Where the bill calls for an answer under oath, and it is given directly responsive to the bill, it is the ordinary rule that the burden is cast on the complainant to prove the charge in his bill by more than one witness, or by the evidence of one witness corroborated by facts or circumstances equivalent to another witness. But where the defendant does not rely on his answer

Morris v. White.

alone, but offers himself as a witness, he may refute himself by his own evidence, and circumstances added may overcome the answer.

4. The doctrine of notice of an unrecorded mortgage giving priority of lien, is based on fraud.

5. When payment of prior mortgages on taking a new mortgage does not give the right of subrogation.

On appeal from a decree in chancery, advised by Vice-Chancellor Van Fleet.

*Mr. C. Robbins*, for appellant.

*Mr. A. C. McLean*, for respondent.

The opinion of the court was delivered by

SCUDDER, J.

The bill was filed by Peter White to foreclose a mortgage made by Ferdinand Morin and wife to the complainant, for $7,500, dated October 11th, 1876, and recorded October 13th, 1876.

Jacob W. Morris recovered a judgment against Ferdinand Morin in the New Jersey supreme court, for $1,004.50, real debt and costs, on October 11th, 1876. This judgment was entered on bond and warrant of attorney for confession of judgment, dated, executed and delivered on October 11th, 1876, the same day on which judgment was entered. Jacob W. Morris died after answer was filed, and the appellants, executors of his last will and testament, were substituted parties to the record. The decree settles the priorities of several judgment and mortgage creditors who were made parties to the suit, and directs the payment of Peter White's mortgage out of the proceeds of the sale of the mortgaged lands, before the judgment of Jacob W. Morris. The appellants appeal from this part of the decree, and this preference given to the Peter White mortgage over the Jacob W. Morris judgment is the only point in dispute on this appeal.

It will be noticed that the mortgage and judgment are dated on the same day, October 11th, 1876. The mortgage was not registered until October 13th, 1876. On the record, therefore, the judgment was first entered, and is entitled to priority of payment as a lien on lands, unless some legal reason is shown for changing this order of priority. It is claimed, in behalf of the mortgage, that Jacob W. Morris, the judgment creditor, had actual notice of the execution and delivery of the mortgage before the entry of his judgment. If this be so, the mortgage must be preferred, for by the act concerning mortgages (*Rev. p. 706 § 22*), unregistered mortgages are only void and of no effect against a subsequent judgment creditor or *bona fide* purchaser, or mortgagee for a valuable consideration, *not having notice thereof.* If a judgment creditor have notice of a prior unregistered mortgage, it is of the same effect, as to him, as if it were registered. If, as in this case, it be registered subsequent to the entry of judgment, such registration will relate back to the time of its execution and delivery, of which the judgment creditor had notice. *Priest* v. *Rice, 1 Pick. 164; Jackson* v. *Van Valkenburgh, 8 Cow. 260; Jackson* v. *Winslow, 9 Cow. 13.*

There must be such actual notice, or fraud, to change the priority of the first registry under the statute. Where there is no fraud shown, the fact that the judgment creditor knew that a mortgage was intended and being prepared, will not deprive him of the right which a creditor has to secure a just debt by greater vigilance and promptness. *Cushing* v. *Hurd, 4 Pick. 252; Warden* v. *Adams, 15 Mass. 233.* After he knows of the execution of the mortgage, it is too late for him to begin his race of vigilance. No point is made in this case against the honesty of the debt secured by the judgment, and both the mortgage and judgment may therefore stand together as liens on the lands of Morin, leaving the question of priority alone to be settled between them.

The bill of foreclosure states and charges that Jacob W. Morris's judgment, by which he claims to have some lien on the mortgaged premises, was obtained with full knowledge of the complainant's mortgage; and if a lien at all, is subsequent to the

Morris *v.* White.

mortgage. It also calls for an answer under oath. This charge
is met in the defendant's answer by an explicit denial of such
notice. This answer being directly responsive to the bill, under
the call made therefor, by oath, the burden is cast on the com-
plainant to disprove it; or, rather, to prove his allegation of notice
by more than one witness, or by the evidence of one witness cor-
roborated by facts and circumstances equivalent to another wit-
ness. This is the ordinary rule. *Stearns* v. *Stearns, 8 C. E. Gr.*
*167.*

The vice-chancellor has found this measure of evidence in the
case, and has advised the decree that the judgment of Jacob W.
Morris is subsequent to the mortgage of Peter White, the com-
plainant, as the same was obtained by confession after the said
Jacob W. Morris knew that the complainant's mortgage had been
made and executed, and before it was recorded, with the fraudu-
lent intent and purpose to make it an encumbrance upon the same
mortgaged premises prior to that of the complainant's "said
mortgage, and to the prejudice of the complainant."

The evidence is that on October 11th, 1876, the day when the
judgment-bond was executed by Morin to Morris, both of these
parties were at Freehold; that Peter White was also there at the
office of his attorney, who prepared the mortgage, and received
$7,500 from him, part of which was to be applied to satisfy three
prior mortgages amounting to $7,000 of principal, besides inter-
est. On that day the mortgage was executed and delivered by
Morin. The exact time of the execution does not appear. Morin
is dead; Peter White is a very aged man, and does not give the
exact time, nor does the attorney appear to remember it. But
Jacob W. Morris, who was examined in his own behalf, says, on
cross-examination, that "Mr. Morin was here [at Freehold]
on that day [October 11th, 1876], and executed a mortgage to
Mr. White; I recollect that very distinctly." He also says that
his bond was executed, to the best of his knowledge, between ten
and twelve o'clock in the forenoon, and further says that he
understood that his judgment was ahead of the mortgage executed
by Mr. White; but he does not say how or why he thus under-
stood. The bond having been executed between ten and twelve

o'clock in the forenoon, it was necessary, before it could have the effect of a judgment, that judgment shall be ordered to be entered thereon, and that the copy of the bond and warrant of attorney, with the entry of the judgment, signed by the justice, judge, or commissioner, should be delivered to the clerk of the court in which said judgment was to be entered; the clerk must file the same in his office, mark the time of filing, and enter the judgment in the minutes of the court. This all takes time; the parties were at Freehold, and the clerk of the court at Trenton.

The printed book does not show the time when the papers were filed and the minute of judgment entered in the supreme court. It was right for the defendant, after admitting that he knew that Mr. Morin was in Freehold on that day and executed a mortgage to Mr. White, and that he recollected that day distinctly, to offer some positive proof, or at least make the express declaration, that this knowledge was not obtained by him until after the entry of his judgment. Instead of this, he seeks to avoid the effect of this admission by the indefinite and equivocal expression in his re-examination that he understood his judgment was ahead of the mortgage executed to Mr. White. But there are other facts which made this evidence more suspicious. He knew that the complainant was about to make a loan of $7,500 to Morin, on mortgage, for, about one week before the execution of the mortgage, Peter White went to Long Branch to look at Morin's property. Jacob W. Morris went with him to examine it, and recommended it to him to be a very good security for that amount of money; he estimated the property to be worth double the money White was to loan to Morin, and said if the buildings were off, the property would still be worth the money he was to loan. White says in this connection, "I told Jacob W. Morris I would let Morin have that amount of money," to wit, $7,500. Morris knew this was intended to be a first encumbrance on the property, and that it was to be used for the payment of three preceding mortgages, which the records then showed to be the only encumbrances, amounting to $7,000. He induced the loan by advising White; knew that the mortgage was executed October 11th, 1876, on the day he was in Freehold

Morris *v.* White.

having his judgment-bond drawn, and the preparations for enter-
ing a judgment thereon; and on the next day, October 12th,
1876, he received from the attorney of Mr. White, at Freehold,
$3,076.93, in payment of a prior mortgage on Morin's property,
which was held by his son, Benjamin P. Morris, and at the time
knew it was paid out of the money received from Peter White
as part consideration of Morin's mortgage to him. I think it
was a fair inference from this evidence that he knew the mort-
gage from Morin to White was executed before the actual enter-
ing of his judgment in the supreme court. That the evidence
was competent and sufficient to meet and overcome the denial
of notice in his answer, I think was rightly adjudged. Where
the defendant does not rely on his answer alone, but offers him-
self as a witness, the rule that one witness is not sufficient to
overcome a responsive answer to a material fact, under oath, is
hardly applicable. An answer may carry its refutation within
itself. *Brown* v. *Bulkley, 1 McCart. 294; Dunham* v. *Gates, 1
Hoff. Ch. 185;* and the defendant may refute himself by his
own evidence. There may also be evidence arising from circum-
stances stronger than the testimony of any single witness. *Clark*
v. *Van Riemsdyk, 9 Cranch 153.*

The rule applies where the reason for it is found. The reason
for the adoption of this rule by courts of equity is because, there
being a single deposition only against the oath of the defendant
in his answer, the denial of facts in the answer is equally strong
with the affirmation of them by the deposition. *2 Dan. Ch.
Pr. 985;* or as it is stated in *Gresley's Eq. Ev. 4,* this rule has
been refered to the equitable principle on which it is grounded,
namely, the equal right to credit which a defendant may claim
when his oath, positively, clearly and precisely given, and con-
sequently subjecting him to the penalty of perjury, is opposed to
the oath of a single witness. But when the witness who opposes
the answer is the defendant himself, the reason of the rule fails.
The court was therefore free to draw the inference that the judg-
ment was obtained by confession after Morris knew that the
complainant's mortgage had been made and executed, and before
it was recorded, from his own testimony and attending circum-

stances.   It is not necessary to go further and say whether there was actual fraud, under the facts; in the purpose to make the defendant's judgment a prior encumbrance on the mortgaged premises, or whether the charge of fraud should be in this case clearly and explicitly charged in the bill.   The charge is made that the defendant had notice of the complainant's mortgage, and that it is a prior encumbrance.   The doctrine of notice, it is said, as affecting the priority of encumbrances, arises from the equitable view that it is fraud in one who has notice of an adverse claim in another to attempt to acquire a title to the prejudice of the interest of which he has been made aware.   *1 Jones on Mort.* § *578.*   Further than this it is not necessary to go to justify the form of the decree in this case.

There is no right of subrogation to the liens of the three prior mortgages which the complainant paid and discharged from the record at the time he took his mortgage.   He expressly refused to take an assignment of these mortgages, and voluntarily paid and discharged them from the record because he preferred to have the one mortgage to himself securing the total amount loaned by him to Morin.   The doctrine of subrogation is not applied to the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own.   *Sheldon on Subrog.* § *240,* and cases in notes.

The decree will be affirmed, with costs.

*Decree unanimously affirmed.*